[S. F. No. 16001. In Bank.—June 27, 1939.]

In the Matter of the Estate of CORA C. SLACK, Deceased. JOSEPHINE A. SPARKS et al., Appellants, v. JENNIE B. RENWICK et al., Respondents.

Charles C. Boynton for Appellants.

W. A. Bradenburger and Wm. A. White for Respondents.

CURTIS, J.—This is an appeal from a decree determining heirship in a contest between the relatives of the decedent wife and the relatives of the predeceased husband. Decedent, Cora C. Slack, died on March 1, 1934, intestate, and without issue, and leaving neither father nor mother surviving. The predeceased husband, Charles A. Slack, had died on November 27, 1931, intestate, and without issue, and leaving neither father nor mother surviving. Appellants are the two sisters, seven nieces and two grandnieces of the decedent wife. Respondents are the two nieces and one nephew of the predeceased husband.

The proceedings were instituted by the relatives of the decedent wife by the filing of a petition to determine heirship. The petitioners claimed in said petition to be entitled as heirs of the decedent to have the whole of the estate of the decedent distributed to them by reason of the fact that at the time of the death of the predeceased spouse all of the property which had been acquired by the spouses out of community funds had, prior to the death of the husband, been transmuted into the separate property of the wife. Respondents, answering said petition, claimed that they were entitled, under section 229 of the Probate Code to have distributed to them that portion of the estate of the decedent which had been the separate property of the predeceased husband and had come to decedent from him by gift, descent, devise and bequest, and that they were entitled under the provisions of section 228 of the Probate Code, to share equally with the relatives of decedent in the distribution of the estate of decedent which had been the community property of the decedent and her predeceased husband. The property in the estate of decedent consisted of an apartment house on Baker Street in San Francisco, appraised at $5,750, and a small amount of personal property, including a small amount of cash.

The finding of the trial court was: "That decedent and her predeceased husband were married June 27th, 1894; that neither of them brought any separate property into the com-

munity; that the property and estate accumulated by said spouses during their lifetime was the community property of said spouses and now constitutes the estate of Cora C. Slack, the decedent; that said estate consists of the personal property now in the hands of the administratrix herein and that certain real property consisting of a certain apartment house and furnishings located at 1598 Hayes Street in the City and County of San Francisco." The court likewise found that the ·entire residue of the estate of said decedent consisting of the aforesaid real and personal property descends as follows: "An undivided one-half thereof to the heirs of Cora C. Slack, the decedent, and an undivided one-half thereof to the heirs of Charles A. Slack, predeceased husband of said decedent."

 The main controversy between the two groups of contestants revolved around the question as to who was entitled to inherit the apartment house. We are satisfied, as to that portion of the decree determining that each group was entitled to inherit equally, that the trial court reached the correct conclusion, and that the decree in so far as it affects the apartment house must be affirmed.

The evidence adduced at the hearing amply supported the finding of the trial court that neither of the spouses brought any separate property into the community and that the property and estate accumulated by said spouses during their lifetime were community property. At the time of the marriage of the spouses in 1894, the decedent was a dressmaker and her husband was clerking in a grocery store at the corner of Post and Mason Streets in San Francisco. Respondents offered the testimony of a niece of Mr. Slack's to prove that prior to the marriage, Mr. Slack had received money from his mother with which to set up a grocery store of his own, and it was this witness's recollection that at the time of his marriage he was already established as proprietor in his own grocery store. However, this witness's memory for dates was very hazy and several witnesses who had been close friends of Mr. and Mrs. Slack both prior to their marriage and for many years thereafter, testified that it was two or three years subsequent to his marriage that Mr. Slack went into the grocery business for himself and that because of his honesty and reliability he was able to obtain credit from the wholesalers for his goods and thus enabled to establish his business "on

a shoestring''. The testimony of each of these witnesses corroborated the testimony of other witnesses to the same effect, and produced conviction that the property acquired by the spouses had been accumulated by their joint efforts during their married life.

It is to be noted that the finding of the trial court is simply to the effect ''that the property and estates of the spouses accumulated during their lifetime was the community property of the spouses and now constitutes the estate of Cora C. Slack, the decedent''. There is no specific finding as to how the property, or any part thereof, came into the sole and separate ownership of Cora C. Slack, whether it was by gift, devise, descent, or bequest, by right of survivorship, or whether by virtue of its community character a part belonged to her and a part came to her as her separate property upon her husband's death.

█ With reference to the apartment house property, appellants introduced a title insurance report in evidence showing the following chain of title: (1) Deed from Ethel R. McCormick to Chas. A. and Cora C. Slack, recorded June 20, 1917. (2) Deed from Charles A. Slack and Cora C. Slack, to Title Insurance and Guaranty Company, recorded November 22, 1917. (3) Deed from Title Insurance and Guaranty Company to Chas. A. and Cora C. Slack, recorded December 5, 1917. (4) Gift deed from Charles A. Slack to Cora C. Slack, recorded November 27, 1931. The original deed from Ethel R. McCormick to Chas. A. and Cora C. Slack, the deed from the Title Insurance and Guaranty Company, and the gift deed from Charles A. Slack to Cora C. Slack were also introduced in evidence. The date of the execution of the gift deed from Charles A. Slack to Cora C. Slack was March 14, 1923. With reference to the deed of gift from Charles A. Slack to his wife, Mr. Sparks, the brother-in-law of Cora C. Slack, testified that on November 27, 1931, the day following the death of Charles A. Slack, Mrs. Slack had handed him the deed and asked him to have it recorded, stating to him that on the day after she and her husband had returned from a trip to Oroville in June of that year, where they had gone to purchase a burial lot, her husband had handed her the deed, saying to her, ''If anything happens to me, you record it—have it recorded.'' It is true that the niece of Mr. Slack testified that her aunt, Mrs. Slack, had told her that she and

Mr. Slack had executed mutual deeds to each other so that the one who survived would obtain the property without probate and if this was a fact, the deeds whereby each conveyed his or her interest to the other would not affect the title to the property, but this testimony standing alone, is not sufficient to overcome the presumption of valid delivery which arises from the possession of a deed by a grantee. Not only is there in the record the testimony of the positive statement of Mrs. Slack that Mr. Slack handed her the deed, but the circumstances surrounding the trip to Oroville which was to purchase a burial lot by reason of the fact that Mr. Slack had been suffering from heart attacks of increasing severity, strongly supports the truth of Mrs. Slack's statement. No deed from Mrs. Slack to Mr. Slack was found or produced to substantiate the theory of mutual deeds. And it may well be that if the spouses had in fact executed mutual deeds in the mistaken belief that they could thereby avoid probate, due to the poor health of Mr. Slack, the deed from the wife had been destroyed prior to the delivery to her of the deed from her husband. The circumstance of Mr. Slack's ill health likewise disproves, we think, any claim that the delivery of the deed was only a qualified delivery by virtue of the fact that in handing the deed to her he said, ''If anything happens to me, you record it—have it recorded.''

It is apparent, therefore, from the record, that the wife acquired as her separate property, the property which had previously been the community property of the spouses, by *inter vivos* gifts from her husband. She acquired an undivided one-half interest therein by virtue of the original deed from the third party to herself and husband. This is necessarily so by virtue of the form of the deed and the presumption arising from section 164 of the Civil Code at the time of the acquisition of the property. (*Dunn* v. *Mullan,* 211 Cal. 583 [296 Pac. 604, 77 A. L. R. 1015] ; *Estate of Regnart,* 102 Cal. App. 643 [283 Pac. 860].) The taking of the property by the spouses by such deed which resulted in a conversion of one-half of the community property into the separate property of the wife constituted an *inter vivos* gift by the husband of community property. (*Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466] ; *Estate of Regnart, supra.*) The deed from the spouses to the Title Insurance and Guaranty Company had no effect on the title since the property was re-

deeded almost immediately by the Title Insurance and Guaranty Company to the spouses. ■ By the deed of gift from her husband executed on March 14, 1923, delivered on June 13, 1931, and recorded November 27, 1931, Cora C. Slack became the sole and separate owner of the remaining undivided one-half interest which had theretofore been held in the name of Charles C. Slack as the community property of the spouses. (*Dunn* v. *Mullan, supra.*)

Section 228 of the Probate Code provides that, "If the decedent leave no issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, such property goes in equal shares to the children of the deceased spouse, and to their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and to their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of such deceased spouse and to their descendants by right of representation." This section has been recently construed to apply to community property which had come to the surviving spouse by *inter vivos* gift from the predeceased spouse. (*Estate of Rattray,* L. A. No. 16529 (*ante,* p. 702 [91 Pac. (2d) 1042]), this day decided.) This being so, the decree of the trial court finding that the two groups of heirs should share equally in the real property is correct.

■ It may be remarked that even if it be conceded that the deed of gift from Charles A. Slack to his wife was one of two mutual deeds and therefore ineffective to pass title to his wife, under the provisions of the above code section, the respondents would be entitled to share equally with the appellants, for in that event, the one-half interest in the community property which existed at the time of the death of Charles A. Slack, belonged to and went to his wife by virtue of its community character upon his death, and its distribution is controlled by the aforesaid provisions of section 228 of the Probate Code. (*Estate of Simonton,* 183 Cal. 53 [190 Pac. 442].)

The apartment house and furnishings constitute the entire estate left by the decedent except the sum of $1165.98 in money. This sum of money, it is conceded by respondents was the separate property of the decedent and under section 225 of the Probate Code, the appellants were entitled to have distributed to them the whole amount instead of one-half thereof, as provided by the decree appealed from.

The decree of the trial court in so far as it applies to the real property, and to any personal property, except said sum of $1165.98, is affirmed.

As to said sum of $1165.98, said decree is reversed with directions to the trial court to modify its decree and to distribute to appellants the whole of said sum of $1165.98, after deducting from said sum that portion of the expenses of administration, including funeral expenses, expenses of last sickness, and the amount expended in payment of claims against said estate, which said sum of $1165.98 bears to the total appraised value of said estate.

Costs to be borne by each party.

Shenk, J., Waste, C. J., Houser, J., and Seawell, J., concurred.

EDMONDS, J., Dissenting.—I concur in the conclusion reached by my associates that Cora C. Slack acquired by *inter vivos* gift from her husband and as her separate property the real estate which had theretofore been their community property, but I disagree with the construction placed upon section 228 of the Probate Code for the reasons stated by me in *Estate of Rattray (ante,* pp. 702, 717 [91 Pac. (2d) 1042]). I believe, therefore, that the decree appealed from should be reversed in part and that the probate court should be directed to distribute the community property which had become Mrs. Slack's separate property by *inter vivos* gift, in accordance with the provisions of section 225 of the Probate Code.

Rehearing denied. Edmonds, J., voted for a rehearing.