[Civ. No. 11693.   First Dist., Div. One.—May 12, 1941.]

Estate of MRS. CARL BRANDEL, Deceased. STELLA CUSAC, as Administratrix, etc., et al., Respondents, v. ANNA MARIE LINDGREN, Appellant.

736

Russell Scott and Harold L. Hjelm for Appellant.

Wyckoff, Gardner & Parker for Respondents.

WARD, J.—This is an appeal from a decree and order settling the final account of an administrator and ordering distribution, and also determining that appellant was not the daughter of Josephine Brandel, deceased, and not entitled under section 229 of the Probate Code to succeed to her property.

The estate of decedent, who died intestate, consists of real property, cash and personal effects. Appellant's contention is that she was the adopted daughter of decedent and thereby entitled to the entire estate; and that in any event the estate was derived from the separate property of Josephine Brandel's predeceased husband, the uncle of appellant, by reason of which she, as the assignee of some of the other relatives

of the predeceased husband, is entitled to five-sixths of the estate under the provisions of section 229 of the Probate Code. The court decreed distribution of the entire estate to the nieces and nephews of decedent, children of her predeceased sister and brother, under section 225 of the Probate Code; and denied appellant any interest therein.

The basis of plaintiff's claimed adoption may be stated as follows: Appellant was born in Sweden in 1884, her father, who used the name of Sjoberg, being a brother of decedent's husband Carl Brandel. After the death of her mother she was placed in an orphanage and later in the home of a soldier and his wife, not shown to be relatives, who held the child in great affection. Following correspondence over a period of about two years between Carl Brandel and appellant's father in Sweden, Anna Marie Sjoberg or Brandel who was about seven years old at the time, was brought to this country to live with the Carl Brandels in Kansas. A translation of the minutes of a meeting of the board of directors of the orphanage permitting her to be taken to America was introduced as an exhibit. The minutes recite that the father had petitioned that his daughter "be permitted to be taken to America to be brought up by" her uncle "Carl Brandel" who "has applied for, and offered to take up the girl as his own child". The minutes further recited that the board gave its consent that the child be given to the applicant and her registry in the orphanage cancelled.

Appellant contends that her surrender by the Swedish orphanage and acceptance by the Brandels, coupled with the fact that no other procedure requiring a statutory adoption was then available was in and of itself of effect sufficient to constitute a legal adoption.

The right of adoption is wholly statutory. The adoption by one person of another was unknown to the common law. There is no showing in the record that under the law of Sweden, or that of Kansas to which state appellant came, her release by an orphanage and acceptance into the home of the Brandels would constitute adoption. It is not shown that Kansas recognizes such a form of adoption and our own research in that regard has in no respect been helpful to appellant's cause. (Code Civ. Proc., sec. 1875.) Appellant was an adult at the time of her arrival in California and the statutes of this state refer only to the adoption of minor

738

children. (Civ. Code, sec. 221.) "He who claims that an act of adoption has been accomplished must show that every essential requirement has been complied with." (*Estate of Taggart,* 190 Cal. 493, 498 [213 Pac. 504, 27 A. L. R. 1360].)

■ Appellant relies chiefly upon an alleged contract to adopt, which, had it existed, might have entitled her to an equitable remedy, or, under certain circumstances, relief in the probate court. (*Furman* v. *Craine,* 18 Cal. App. 41 [121 Pac. 1007]; *Johnson* v. *Superior Court,* 102 Cal. App. 178 [283 Pac. 331].) Whether an alleged contract to adopt may be asserted in probate proceedings, or whether it must be made the subject of a separate suit in equity, is not a question of vital importance in this case. Assuming that appellant's right is in probate, the evidence as a matter of law does not compel the conclusion that Josephine and Carl Brandel or either of them agreed to adopt appellant. The trial court found against the existence of a contract of adoption. There is some slight evidence that the Brandels may have intended to adopt appellant but the weight of the evidence is otherwise. It is not disputed that appellant was received into their home in Kansas and treated in many respects as their own child. Mrs. Brandel signed her school report cards in the space provided for the signature of a parent and several witnesses testified that the Brandels referred to appellant as their daughter. Other witnesses, however, testified that she was referred to as their niece, and that Mrs. Brandel stated that she had not been adopted. The funeral notice at the time of the death of Mrs. Brandel stated that she was survived by her daughter Mrs. Lindgren, but a newspaper notice of Mr. Brandel's death gave her relationship to be that of a niece. Appellant referred to Mr. and Mrs. Brandel as Uncle and Aunty, and letters addressed to her by Mrs. Brandel are signed "Aunty". Invitations to the wedding of appellant, sent out by Mr. and Mrs. Brandel, referred to her as "their niece Anna Marie". The evidence falls short in weight and sufficiency to prove that appellant is the adopted daughter or that the Brandels agreed to adopt her. Appellant contends that the words "take up" as used in the minutes of the meeting of the board of directors of the orphanage are the equivalent of "adopt". It does not appear that either of the Brandels had any correspondence with the orphanage or that they accepted the child with the intention

of adopting her or that their conduct indicated that such was their intention. The Kansas cases cited are not in point. In *Anderson* v. *Anderson*, 75 Kan. 117 [88 Pac. 743, 9 L. R. A. (N. S.) 229], a written contract provided that upon the death of a husband and wife the child taken over by them should receive "all the property they died possessed of". In *Hickox* v. *Johnston*, 113 Kan. 99 [213 Pac. 1060, 27 A. L. R. 1322], an oral contract of the same nature was reduced to writing.

In view of our approval of the decree on the question of adoption, it is not necessary to consider respondents' contention that under any alleged contract to adopt, the claims of appellant are barred by laches and the statute of limitations.

■■ A further contention of appellant is that she is entitled to succeed to five-sixths of the estate of Mrs. Brandel under Probate Code, section 229. As the niece of Carl Brandel, the daughter of a predeceased brother, and the assignee of other relatives she contends that the property constituting the estate of Mrs. Brandel is derived either from property accumulated by Mr. Brandel prior to his marriage, or from property acquired by him in Kansas during marriage and before the Brandels came to California. The Brandels took up residence in this state in 1922; Carl Brandel died in 1926 and Mrs. Brandel died on or about March 25, 1938. The petition for settlement of the first and final account and for final distribution and the objections thereto filed by appellant were heard on or about May 1, 1939. The probate court determined that no part of the estate of Carl Brandel or of the estate of Mrs. Brandel was community property; that cash on hand at the date of the latter's death was her separate property and "That the real property of said decedent described in said petition for distribution was purchased by decedent in her own name with funds brought into the State of California from the State of Kansas by the said decedent, which funds were derived by her from the sale of realty in the State of Kansas which stood of record in the name of said Josephine Brandel; that the change in status, if any, of any property of said Carl Brandel held by him in the State of Kansas in common law sole ownership to the separate property of Josephine Brandel took place in the State of Kansas prior to the establishment by said Josephine Brandel of her domicile in California."

The evidence pertinent to this question and in support of the decree appears in part as follows: The Brandels married in Kansas around 1888; shortly thereafter they purchased a home in the husband's name; subsequently this home was sold and a second purchased in the wife's name; the second home was thereafter sold, part of the proceeds thereof being used to pay off a mortgage on the place, and the balance of approximately $3,000 placed in a Kansas bank and evidenced by a certificate of deposit issued to Mrs. Brandel. Part of this was withdrawn before the Brandels moved to California and the balance thereafter. California property, paid for at least in part from funds growing out of the certificate of deposit was purchased in the name of Mrs. Brandel. If the original certificate of deposit or any issued in lieu thereof represented in whole or in part funds held by the husband in common law sole ownership in Kansas, the placing of such funds in the name of the wife before they left Kansas indicates a gift to her, resulting in a change of ownership and constituting thereafter the separate property of the wife. The record does not show that appellant, upon whom the burden rested, established to the contrary. (Prob. Code, secs. 228, 229; *Estate of Simonton*, 183 Cal. 53 [190 Pac. 442]; *Estate of Rattray*, 13 Cal. (2d) 702 [91 Pac. (2d) 1042]; *Estate of Slack*, 13 Cal. (2d) 721 [91 Pac. (2d) 1052].)

During the period that the Brandels lived in Kansas, Mrs. Brandel received a small inheritance from the estate of her mother. Over a number of years she took in boarders. The evidence does not show that Mr. Brandel acquired separate or community property after arrival in this state. After the death of her husband Mrs. Brandel worked as a servant and nurse; and the deposits of money in a California bank were made subsequent to the death of Mr. Brandel. Appellant failed to make a sufficient tracing of funds to enable the trial court to determine what part, if any, of Mrs. Brandel's estate was derived from property held in Kansas in common law sole ownership by the husband, which, upon its entry into California, became his separate property within the meaning of the law of this state.

Each side relies upon *Estate of Allshouse*, 13 Cal. (2d) 691 [91 Pac. (2d) 887]. In that case husband and wife acquired property in Missouri during their marriage, which had it been acquired in California would have been community property.

In Missouri it was held by the husband in common law owner-
ship subject to the wife's dower right. The property was
transferred to the wife either by gift before death or on dis-
tribution of his estate under the laws of Missouri. Later the
wife came to California and was continuously domiciled here
up to the time of her death. The court held that while at
the time of her death the property acquired in Missouri had
more of the incidents of California separate property than
of community property, it nevertheless differed in its inci-
dents from separate property acquired in California, for
which reason section 229 did not apply. The effect of this
conclusion was to exclude the husband's relatives entirely,
leaving the property to descend under Probate Code, section
225. Had the husband brought into this state property which
he at that time held in common law sole ownership, and there-
after it had been given, bequeathed or permitted to descend
to the wife, section 229 would be applicable upon the wife's
subsequent death intestate. We do not construe the decision
as applying to property other than such as was held by the
husband in common law sole ownership, and transferred by
him to his wife prior to the parties coming to California.

The facts of the present case differ from those of the
Allshouse case in that in the latter the husband died before
the wife came to California bringing the property with her.
The Brandels came to California before the death of the hus-
band. In *Estate of Allshouse, supra,* 699, the court said:
"Had the husband brought the property to this state, or had
he become domiciled here, the rule would be different, for it
is well settled that foreign property, when subjected to the
laws of a community property jurisdiction, may be reclassified
thereunder."

In the present case the court found as to a parcel of real
property constituting part of the estate of Mrs. Brandel,
that it was purchased by her in her own name with funds
derived from the sale of realty in Kansas which stood of
record in her name, and that if the realty could be traced back
to any property held by Mr. Brandel in common law sole
ownership, its status had been changed, and it had become
the separate property of Mrs. Brandel before she left Kansas
with her husband. The court further found that the cash on
hand had been acquired after the death of her husband, and

that the wife received none of it by gift or otherwise from her husband.

It is contended that where the assets are mingled in California, the resultant fund constitutes community property, and that if that property would be community property here, then it should be construed so to be when it is brought from another jurisdiction.

In *Truelsen* v. *Nelson*, 42 Cal. App. (2d) 750 [109 Pac. (2d) 996], cited by appellant, the husband placed his earnings in his wife's bank account. The decision is entirely foreign to the facts herein. No question of bringing funds into this state was involved. The legal principles involved in the Porter case are correct as applied to the facts of that case, but here appellant failed to prove a commingling of funds either here or in Kansas.

The portion of the decree appealed from is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 7, 1941.