[Civ. No. 12469. First Dist., Div. One. Oct. 1, 1943.]

Estate of MARTHA TAITMEYER, Deceased. HELEN CADWELL, Appellant, v. VIRGINIA M. BROCKMAN, as Administratrix, etc., Respondent.

John Langer and Howard Magee for Appellant.

R. L. Husted for Respondent.

WARD, J.—This is an appeal from a decree settling final account and ordering distribution in the matter of the estate of Martha Taitmeyer. The decree directed one-half of the estate to be distributed to appellant, the stepdaughter of decedent, and one-half to respondent, the decedent's sister and administratrix of her estate.

The major issue on appeal is: Where the intestate decedent held in joint tenancy with her previously deceased spouse property purchased with community funds, does the whole or only one-half thereof go to the child of such previously deceased spouse?

The facts, set forth in appellant's opening brief and conceded by respondent to be correct, are as follows: ''Appellant is admittedly the issue of the marriage between O. F. Taitmeyer and his first wife. On the death of the latter, Mr. Taitmeyer married Martha Taitmeyer . . . and during this latter marriage, community property was acquired which was used in the purchase of two pieces of real property taken as joint tenants in the name of husband and wife. Mr. Taitmeyer . . . died on the 14th day of October, 1935, and thereafter the joint tenancy was terminated by court decree. Decedent also collected $3000 in life insurance on a policy on the life of Mr. Taitmeyer, premiums on which were all paid from community funds.

''Between the date of her husband's death and her later death, decedent reduced the balance due on principal on the real property previously held in joint tenancy by $1000.00, but this payment was made from the proceeds of the life insurance policy on her husband's life. The real property in question was sold in the course of probate of decedent's estate, and the entire residue for distribution consists of $2182.14 in cash.

"Decedent died intestate on November 19, 1941, without issue; leaving an estate composed of real property formerly held in joint tenancy and on which part of the proceeds of the life insurance amounting to $1000.00 had been paid. Respondent is the sister and nearest of kin to the decedent who claims 'one-half of the decedent's estate and admits appellant's right to the other one-half. The Superior Court awarded one-half of the estate to respondent and one-half to the appellant."

Appellant contends that under the provisions of Probate Code sections 228 and 229, decedent's entire estate, consisting of property purchased with community funds and held in joint tenancy with her previously deceased spouse, should go to appellant as the child of such previously deceased spouse.

The sections pertinent to that issue, as amended in 1939 (Stats. 1939, chap. 1065, p. 2992) are as follows: "If the decedent leaves *neither spouse nor* issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, *and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead,* such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendents by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of *said* deceased spouse and to their descendents by right of representation." "If the decedent leaves *neither spouse nor* issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, *or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent,* such property goes in equal shares to the children

of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation.'' (Amendments of 1939 italicized.)

Both of the above sections apply to the law of succession where there is no issue of the marriage between decedent and a predeceased spouse, and where the property had been held by decedent in joint tenancy. Section 228 applies when the property was of a community character; section 229, when it was separate property.

In the present proceeding it is admitted that the property held by the spouses in joint tenancy was in fact purchased with community funds; but respondent contends that when such funds are used in the purchase of property taken in the name of the husband and wife as joint tenants, the parties immediately acquire an interest therein which becomes the separate property of each. In other words, that an undivided one-half interest vested immediately in the wife and that when the husband died his half interest vested in her by reason of being the survivor of the joint tenancy interest. In support of the contention that a one-half interest vests immediately, respondent cites *Zeigler* v. *Bonnell*, 52 Cal.App.2d 217 [126 P.2d 118], which will be referred to later, and *In re Kessler*, 217 Cal. 32 [17 P.2d 117].

The amendments of 1939 to sections 228 and 229 were undoubtedly enacted to eliminate confusion that existed with regard to their interpretation. It may have been necessary only to include the joint tenancy provision in section 229, which covers separate property, but it is also found in section 228. The reasonable explanation seems to be that the Legislature intended to ignore the fact that a vested one-half interest as separate property may be created, and viewed the property in its original form as community property, and consequently it may be assumed that in section 228 the Legislature was referring to the entire interest, and intended that the whole, apart from any possible interest therein, should go to the issue of the predeceased spouse. Successive changes made in the statutes on this subject have been before reviewing courts for interpretation, and the conclusions reached in the principal decisions thereon are enlightening as to the purpose of the present amendment.

Considering the interests of relatives of each spouse, but

not a child of a predeceased spouse, the court, in *Estate of Rattray*, 13 Cal.2d 702, 708 [91 P.2d 1042], said: "We are of the opinion that a study of history of these two sections since the original enactment of subdivision 8 (mistakenly numbered subdivision 9) of section 1386 of the Civil Code in 1880, and an understanding of the obvious purpose behind the enactment of these two provisions, controlling, in the absence of issue or testamentary disposition, the descent and distribution of property of a decedent which had been either the community property of the spouses or the separate property of a predeceased spouse, compels the conclusion that section 228 and section 229 of the Probate Code should be read and construed together." The court thereupon set forth the history of the two sections, the various changes enacted, and reiterated its conclusion (p. 713) "that there has been a consistent attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived. The scheme in general, as was fair and reasonable, provided that the separate property of a predeceased spouse should go back in its entirety to the relatives of said predeceased spouse, and that the community property of the spouses should be shared equally by the relatives of the predeceased spouse and the relatives of the surviving spouse since both spouses are deemed to have contributed equally to its acquisition."

In the Kessler case, *supra*, not dealing with lineal descendants, the court said (p. 34): "The controlling question is whether the taking and holding of community property by husband and wife as joint tenants changes the character of such property. The contention of appellants that its community character is left unchanged is answered in the case of *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003], wherein this court held that in such a case a true joint tenancy is created in which the interest of each spouse is separate property (see, also, *Delanoy* v. *Delanoy*, 216 Cal. 23, 27 [13 P.2d 513, 719]; 20 Cal.L.Rev. 546.) It necessarily follows that as to all of the property involved herein which was held by the parties as joint tenants, the wife succeeded to the husband's separate interest by right of survivorship, and upon her death, her heirs alone were entitled to share therein."

In the Siberell case, 214 Cal. 767 [7 P.2d 1003], cited in

the Kessler case, the court said (p. 773): "First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate." In the Siberell case the court was not considering sections 228 and 229.

In *Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873], in which no child appeared, the following is found (p. 657): "Prior to the 1931 amendment, whereby the word, 'gift' was added to said section 229 of the Probate Code, the relatives of a predeceased spouse were entitled to inherit in the estate of the surviving spouse, such property as had been the separate property of the predeceased spouse and had come to the decedent from such spouse by descent, devise or bequest. In 1931, the code commission, as they said, 'in order to make the section logically complete,' added the word, 'gift.' The result was that upon the death of the surviving spouse the relatives of a predeceased spouse became entitled to inherit under said provisions such property as had been the separate property of said predeceased spouse and had come to said surviving spouse by *inter vivos* gift from said predeceased spouse."

In *Estate of Frary*, 26 Cal.App.2d 83 [78 P.2d 760], where the daughter of a predeceased wife appeared, the court, using as authority *Siberell* v. *Siberell, supra,* said (p. 86): "While the transfer of separate property into a joint tenancy status may often constitute a gift *inter vivos* (see *Bell* v. *Moloney*, 175 Cal. 366 [165 P. 917]; *George* v. *Daly*, 83 Cal. App. 684 [257 P. 171]; *Tilden* v. *Tilden*, 81 Cal.App. 535 [254 P. 310]), this is not necessarily the case where a husband and wife use that form of contract to transfer or change their respective interests in property earned during the marriage into a joint tenancy. In a very real sense the parties in such a case are not making a gift to each other but each is retaining an interest which is separate property and which may ripen into the absolute ownership of all of the property if he survive the other. We think that such a situation should not be held to constitute a gift within the meaning of section

229 of the Probate Code, but it is rather a contractual change in the status of the property and in the rights of the parties. Not only is this change brought about by contract, each of the parties contributing an interest in property theretofore held by him, but the resulting condition permits both parties to retain the equal enjoyment of the entire property during their joint lives, and then leaves the property to whichever one may survive the other.''

In *Estate of Lissner,* 27 Cal.App.2d 570, 574 [81 P.2d 448], no child appearing, the rule stated in *Estate of Harris, supra,* that ''the creation of a joint tenancy between husband and wife in the separate property of either constitutes a gift from one to the other, and that upon the death of the surviving spouse the property covered by the joint tenancy is to be distributed to the heirs of the predeceased spouse, under section 229, Probate Code, just as the court did in this case'' was followed.

In *Estate of Allshouse,* 13 Cal.2d 691 [91 P.2d 887], dealing with foreign property brought into a community property state, and where the son of a predeceased spouse was respondent, it was held (p. 698) that personal property owned by the husband prior to, or acquired after, his marriage, by gift, devise, descent or bequest was his separate property, and that upon the death of the wife ''The ownership was in essence that of the very type of property which it is the intent and purpose of section 229 to return to the husband's family upon death of the wife intestate and without issue.'' As applied to the facts of that case, the opinion also stated (p. 699): ''Had the husband brought the property to this state, or had he become domiciled here, the rule would be different, for it is well settled that foreign property, when subjected to the laws of a community property jurisdiction, may be reclassified thereunder.'' The decree in the Allshouse case was reversed, the court saying (pp. 701-702): ''Therefore even if it can be said that decedent's interest in the Missouri real property in fact originated in a gift to her by the husband of his separate property, the creation of the tenancy by the entirety followed by transmutation into a California joint tenancy, must be held to have broken the chain of the gift so far as application of the statutes of succession of the community property jurisdiction is concerned.''

In the same volume (13 Cal.2d), in *Estate of Rattray, supra,* the court said (p. 716): ''As we read section 228 of the Probate Code it provides that that portion of the estate of a decedent who died intestate without issue, which has been

the community property of said decedent and a predeceased spouse, which has come to said decedent by gift, devise, descent or bequest from such predeceased spouse, or belonged or went to the decedent by virtue of its community character on the death of such predeceased spouse, goes in equal shares to the relatives of the predeceased spouse and the relatives of the decedent designated in said section.'' It should be noted that in the Rattray case no issue of a predeceased spouse was involved. Filed on the same date as the Rattray decision, and using that case as authority, *Estate of Slack,* 13 Cal.2d 721 [91 P.2d 1052] held that in the estate of a widow dying intestate, without issue, leaving property ascertained to be community property of the widow and her predeceased husband, who also died without issue, his nieces and nephew were entitled to share with the sisters, nieces and grandnieces of the deceased widow. (See, also, *Sears* v. *Rule,* 45 Cal.App.2d 374 [114 P.2d 57]; *Estate of Brandel,* 44 Cal. App.2d 735 [112 P.2d 976]; *Estate of Brady,* 171 Cal. 1 [151 P. 275]; *Estate of McArthur,* 210 Cal. 439 [292 P. 469, 72 A.L.R. 1318]; *Estate of Putnam,* 219 Cal. 608 [28 P.2d 27]; *Estate of McCauley,* 138 Cal. 546 [71 P. 458]; *Estate of Simonton,* 183 Cal. 53 [190 P. 442]; *Siberell* v. *Siberell, supra; Delanoy* v. *Delanoy,* 216 Cal. 23 [13 P.2d 513]; *Estate of Mercer,* 205 Cal. 506 [271 P. 1067]; *Estate of Hill,* 179 Cal. 683 [178 P. 710]; *Estate of Miller,* 23 Cal.App.2d 16 [71 P.2d 1117].)

The latest judicial expression on this subject called to our attention is in *Estate of Perkins,* 21 Cal.2d 561 [134 P.2d 231], where the son of a predeceased spouse appeared as respondent, the court saying (p. 563): ''The question for decision concerns the character of the property left by Mrs. Perkins. The respondent claims all of her estate as separate property of her deceased husband which she acquired by gift from him. By its second judgment the probate court sustained the respondent's contention as to all of her property except a portion valued at $4,313, which had come to her by bequest.'' This decision though filed in 1943 construed sections 228 and 229 as each read prior to the 1939 amendments and as applicable to property acquired by a husband and wife in a common-law state and brought into the State of California by the surviving spouse, who died here. The discussion in the Perkins case relative to *Estate of Allshouse* is not pertinent to the facts herein. However, at pages 569-570, the court said: ''Sections 228 and 229 together provide for the succes-

sion of all property in which the predeceased spouse had some interest. Their scope is not limited to community property, and they have been construed as providing that upon the death of the survivor of the marriage, intestate and without issue, the property should go to the family or families of the spouse or spouses through whose efforts the estate was accumulated. [Citing cases.] By these sections, the court has said, the Legislature intended that a lineal descendant of the predeceased spouse should succeed to all property of the surviving spouse in which the predeceased spouse owned an interest; if there were no lineal descendants of either spouse, the property should then be divided equally between the respective families of the two spouses by whose efforts it was accumulated. If, however, the property had originally come to the predeceased spouse by other means than his efforts during the existence of the marriage, such as acquisition before marriage, or by gift, devise, or bequest subsequent to the marriage, then the Legislature intended that such property should descend, upon the death of the survivor, entirely to the family of the predeceased spouse."

*In re Kessler, supra,* relied upon by respondent, to the effect that where the property had been community property before being held in joint tenancy none of the property went to the heirs of the predeceased spouse, is seldom mentioned in the decisions cited.

In the absence of a will, the right of inheritance is dependent upon operation of law. (*Estate of Donahue,* 36 Cal. 329; *Larrabee* v. *Tracy,* 39 Cal.App.2d 593 [103 P.2d 61].) The right of inheritance in this state, subject to constitutional limitation, rests upon provisions of the Probate Code. (*McCaughey* v. *Lyall,* 152 Cal. 615 [93 P. 681].) There is no general constitutional limitation upon the law of succession. ". . . the law of succession is entirely within the control of the Legislature." (*Estate of Perkins, supra,* at p. 569.) "Succession is the acquisition of title to the property of one who died without disposing of it by will." (Prob. Code, sec. 200.)

Upon the well-established rule that the right of inheritance and the law of succession are statutory, the Legislature in 1939 with the evident purpose of clarifying or changing the rule in sections 228 and 229, amended them as heretofore indicated. The wisdom of legislative action is not a subject for judicial criticism.

As applied to the facts of this case, the question

arises whether, under the terms of the amendment, the surviving spouse became "vested" with the whole of the joint tenancy interest or with one-half thereof, or did the property "vest" in the surviving spouse at all. In other words, what does "vested . . . by right of survivorship" mean as used in the code sections. The wording of the sections is ambiguous. As used therein, does it mean that when the community property is placed in joint tenancy, its community character is destroyed and it becomes separate property; that such separate property rights vest completely and that upon the death of the husband the wife succeeds to the husband's interest by "right of survivorship"? If so, then the Legislature, in enacting the amendment, did not have the constitutional right to divest the wife of her property, as such action would be an arbitrary and unreasonable invasion of the vested rights of the wife. (Const. of Cal., art. I, sec. 1.) "Neither the federal Constitution nor the Constitution of California prohibits the enactment of retrospective laws" (*Southern Cal. Edison Co.* v. *Johnson*, 55 Cal.App.2d 638, 645 [131 P.2d 43] ; *American States W. S. Co.* v. *Johnson*, 31 Cal.App.2d 606 [88 P.2d 770]), but a retrospective act may not be given effect to deprive one of a completely vested property right. (5 Cal.Jur., pp. 728-729, sec. 129, and pp. 751-752, sec. 145.)

At this point it may not be amiss to give consideration to the word "vested" particularly as applied to a joint tenancy. In *Zeigler* v. *Bonnell*, 52 Cal.App.2d 217 [126 P.2d 118] the question was raised whether a judgment lien on the interest of one joint tenant prior to execution severs the joint tenancy. At pages 219-220, this court said: "The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. (*Green* v. *Skinner*, 185 Cal. 435 [197 P. 60].) While both joint tenants are alive each has a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives."

The Siberell case, *supra*, cited in the Kessler case, so far as the present point is concerned, is in fact somewhat a reiteration of views expressed in *Estate of Gurnsey*, 177 Cal. 211 [170 P. 402], where, at pages 215-216, the court said: "In *Hannon* v. *Southern Pac. R. Co.*, 12 Cal.App. 350, 355 [107 P. 335], the subject was treated at greater length. It was

there shown that, at common law, the title to the joint property did not pass to and 'vest in the survivor,' upon the death of his cotenant, but that 'each tenant was seised of the whole estate from the first, and no change occurred in his title on the death of his cotenant'; that 'it simply "remained" to him,' and came to him 'wholly from the original grant,' so that after the death of one, the other, in pleading his title, could allege a conveyance by the original grantor to himself, without mention of the cotenant, citing Coke on Littleton, section 286, and 1 Washburn on Real Property, page 646, and concluding with the following: 'It is therefore a mistake to say of joint tenants that the title vests in the survivor upon the death of the cotenant; or that it descends to him from his cotenant; for it had already vested in him by, and at the time of, the original grant.' This is the legal effect of a joint tenancy at common law and under our code, and it would, of course, prevail without regard to the actual intent of the donor who created it." (*McDougald* v. *Boyd,* 172 Cal. 753 [159 P. 168].) The Siberell case, *supra,* does not hold that, on the creation of a cotenancy, each tenant is vested with a one-half interest in the property, and that upon the death of one the whole is "vested" in the survivor. The gist of the holding in the Siberell case is that a community interest and a joint tenancy cannot exist at the same time, and that the use of community funds in the acquisition of property held in joint tenancy is simply an indication of an agreement that the property is no longer community property but takes on the characteristics of a joint tenancy. "Upon the creation of the joint tenancy each owned their interest as separate property." (*Estate of Harris, supra,* at p. 659; *Tomaier* v. *Tomaier,* 50 Cal.App.2d 516 [123 P.2d 548].)

In view of the holding herein that the predeceased husband's joint tenancy interest did not vest in the decedent wife at the time of his death, the contention of respondent that as a matter of law upon the wife's death the property vested in her heirs alone, cannot be upheld.

Some color may be given to the last theory discussed as it must be held that during the life of the wife she could have disposed of the property as she desired. This is not the question presented on this appeal. Sections 228 and 229 are applicable only when the acquisition of title to the property depends upon one dying without disposing of it by will.

Assuming, as respondent contends, that upon the death of her spouse certain rights to their property in whole or

in part vested in the wife, she could have sold it and disposed of the proceeds, given it away, directed its disposition by will, etc. In such event the property vested conditionally; that is, she had the right to its enjoyment and upon her death it was subject to her testamentary disposition. (*Estate of Flood*, 55 Cal.App.2d 410 [130 P.2d 811]; *Estate of Putnam, supra*.) If there was no will it must be assumed that decedent intended that the property should be disposed of by operation of law; that is, in accordance with statutory rules of succession. ▮ The owner of property can prevent the property from becoming subject to the laws of succession by disposing of it by will. (16 Am.Jur. pp. 776, 777-778, secs. 10 and 12.)

▮ So far as the facts of this case are concerned, the use of the words "vested in" in the two sections in question may be treated as surplusage or, if construed, must be interpreted as meaning "came to" as those words are used in the same sections. When the sections are read together it appears that in amending the act it was the intention to make certain that *all* property (*Estate of Rattray, supra*) which "came to" decedent as a gift, by descent, devise or bequest or by right of survivorship in a joint tenancy or homestead, which had been community property of decedent and a previously deceased spouse (sec. 228) or had been the separate property of the predeceased spouse should go first to the child or children of the deceased spouse and, if none, then as the sections direct.

▮ The expression "came to" in this instance if given the meaning that the acquisition happened or occurred through any channel that had its inception and continued protection by operation of law (*Shippen* v. *Izard* (Pa.), 1 Serg. & R. 222), is appropriate and indicates the apparent intention in the enactment of the amendments, particularly when the consequences that would follow respondent's interpretation are considered, namely, that a sister of decedent would share equally with the daughter of a predeceased spouse. This is not in accord with the plan or scheme as evidenced by the two sections in their entirety for the disposition of property where there is no issue of a predeceased spouse.

▮ The provision in each section is subject to the proviso that decedent leave no issue. Under such circumstances there does not seem to be any injustice in giving property to a child if it had been separate property of a parent, and the rule enacted by the Legislature that if a decedent dies without

issue the property which had been community property should go to the child of a predeceased spouse is not subject to criticism.

It should be noted that separate property of the predeceased spouse goes to those of lineal (*Estate of Perkins, supra*), and if none to those of collateral, consanguinity. (Sec. 229.) If the property was of community character, the direct line of succession is first preferred; that is, to the child or children of the predeceased spouse, otherwise one-half goes to the parents or descendants of each spouse by right of representation. (Sec. 228.) It is the origin rather than the present title which the amendments seek to make the test in determining the rights of the parties.

■ We are of the opinion that when the decedent died intestate, without issue or spouse, the property which came to her as a surviving joint tenant with her previously deceased spouse, and which had been originally acquired with community property funds, should go wholly and entirely to the issue of the predeceased spouse rather than to the decedent's next of kin, this being the legislative intent in enacting the 1939 amendments. This conclusion is reached with due consideration given to cases relied upon by respondent.

*In re Kessler*, citing section 228, was decided upon the authority of *Siberell* v. *Siberell, supra*, and *Delanoy* v. *Delanoy, supra. Siberell* v. *Siberell* was an action involving division of property by a decree of divorce. *Delanoy* v. *Delanoy* was an action based upon fraud. In neither case was the court called upon to consider sections 228 or 229. In *Estate of Frary*, citing *Estate of Putnam*, it was held in effect that the creation of a joint tenancy destroys the force of the provision in section 229 upon the theory that it is not necessarily the rule that when a form of contract changes the respective interests of the spouses in the property a gift *inter vivos* occurs. The Siberell, Frary, Kessler and Putnam cases were decided before the amendment. ■ The law of the case in effect at the time of decedent's death controls. (*Estate of Flood, supra*.)

*Estate of Perkins, supra*, in effect decides this appeal, but when in addition thereto the 1939 amendments are considered it must be determined that respondent, the sister of decedent, had no vested right, as that term is used in the sections, to inherit. She simply had an expectancy and should not be heard to object if the probate statutes negative her claimed right.

In view of the conclusion reached on the main issue on appeal, it is not necessary to discuss the question of the $1,000 life insurance, as the daughter of the predeceased spouse is entitled to the entire estate.

The order settling final account and decreeing distribution is reversed. The trial court will direct a final account and a decree of distribution in accordance with the views expressed herein.

Peters, P. J., and Knight, J., concurred.