[L. A. No. 19221.   In Bank.   July 9, 1946.]

Estate of WILLIAM ABDALE, Deceased.   CHARLES RAYMOND RANDALL, Respondent, v. THE DEPARTMENT of INSTITUTIONS, as Guardian, etc., et al., Appellants.

Robert E. Hatch, Brandenburger & White and Wm. A. White for Appellants.

Joseph J. Goodman, S. Arion Lewis, Jr., and Harold R. Spence for Respondent.

TRAYNOR, J.—The contestants appeal from an order in a proceeding under section 1080 of the Probate Code that the petitioner, Charles R. Randall, is the sole heir at law of William Abdale, deceased. The decedent acquired various parcels of real estate before his marriage on August 13, 1929, to Anna Marie Becker. On December 15, 1930, he had title to this property transferred to himself and his wife as joint tenants. It appears that Mrs. Abdale received her interest as joint tenant as a gift from her husband. He again became the sole owner of the property on the death intestate of Mrs. Abdale on February 14, 1941. He sold the property for $19,855 a few months before his death intestate on February 2, 1943. His estate consists solely of funds and securities derived from the proceeds of this sale. The decedent's only income during his marriage was from his separate property, and no evidence was presented that any contribution was made to the real estate from community funds. The decedent left neither spouse nor issue. The petitioner is the son by a prior marriage of Anna Marie Abdale, and is her only issue. Contestants are the legal representatives of the son, declared incompetent, of a predeceased brother of decedent, the children of another predeceased brother, and the legal representative of a brother deceased since the death of decedent.

■ Petitioner relies on section 229 of the Probate Code: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation."* The contestants contend

---

*Corresponding provisions with respect to community property are found in section 228 of the Probate Code: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or became vested in the decedent on

that this section is not applicable and that the estate is distributable to them under section 225 of the Probate Code, on the grounds that the governing principle of sections 228 and 229 is that the origin or source of the property determines its distribution and that the property in question did not have its origin or source as separate property of the predeceased spouse, since it was originally the separate property of the decedent and any interest therein of the predeceased spouse came to her as a gift from the decedent.

The petitioner contends that even though the property was originally the separate property of the decedent, the predeceased spouse held her interest in the joint tenancy as her separate property (citing *Estate of Harris,* 9 Cal.2d 649, 659 [72 P.2d 873]), which therefore became vested in the decedent within the meaning of section 229 upon her death. According to this contention, it is immaterial that William Abdale was the sole owner of the property before the creation of the joint tenancy, or that it was through his efforts that the property was accumulated. The question is thus posed whether separate property given by one spouse to another can be viewed as property that in retrospect "was separate property" of the donor spouse or only as separate property of the donee spouse within the meaning of section 229, if the donor spouse survives the donee spouse and thereby reacquires the property. If the donor spouse predeceases the donee spouse, it is clear that the property will be distributed upon the death of the latter intestate without spouse or issue, as property that "was separate property" of· the predeceased donor spouse. (*Estate of Brady,* 171 Cal. 1, 4 [151 P. 275]; *Estate of Harris,* 9 Cal.2d 649, 658 [72 P.2d 873].) Thus if a husband gives his separate property to his wife and predeceases her, on her death intestate leaving neither spouse nor issue his kin will inherit the property under section 229. It would be a strange

the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation."

anomaly if, should he survive her and thereby reacquire the property, on his death intestate leaving neither spouse nor issue, not his kin but his wife's would inherit the property under section 229.

After reviewing the history of sections 228 and 229, in *Estate of Rattray*, 13 Cal.2d 702, 713 [91 P.2d 1042], this court stated: "It is apparent from the history of these code provisions and the various changes therein that ever since the amendment in 1905 [Stats. 1905, p. 608], wherein the origin or source of the property was first set up as one of the determining factors in the descent and distribution of the estate of a decedent dying intestate without issue, that there has been a consistent attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived. The scheme in general, as was fair and reasonable, provided that the separate property of a predeceased spouse should go back in its entirety to the relatives of said predeceased spouse, and that the community property of the spouses should be shared equally by the relatives of the predeceased spouse and the relatives of the surviving spouse since both spouses are deemed to have contributed equally to its acquisition. . . . It will be noted that the provisions relative to the separate property of the predeceased spouse and relative to the community property of the spouses . . . were intended to furnish one general plan of distribution based upon the same underlying fundamental principle, that the origin or source of the property should determine its distribution."

This principle has been uniformly recognized in the construction of these provisions. (*Estate of Perkins*, 21 Cal.2d 561, 569, 576 [134 P.2d 231]; *Estate of Rattray, supra*, 13 Cal.2d 702, 713; *Estate of Slack*, 13 Cal.2d 721, 727 [91 P.2d 1052]; *Estate of Harris*, 9 Cal.2d 649, 660 [72 P.2d 873]; *Estate of Putnam*, 219 Cal. 608, 611 [28 P.2d 27]; *Estate of McArthur*, 210 Cal. 439, 445 [292 P. 469, 72 A.L.R. 1318]; *Estate of Hill*, 179 Cal. 683, 688 [178 P. 710]; *Estate of Brady*, 171 Cal. 1, 4 [151 P. 275]; *Estate of Nielsen*, 65 Cal. App.2d 60, 62 [149 P.2d 737]; *Estate of Taitmeyer*, 60 Cal. App.2d 699, 704 [141 P.2d 504]; *Estate of Flood*, 55 Cal.App. 2d 410, 412 [130 P.2d 811]; see 27 Cal.L.Rev. 748.) If the

property had its origin or source as the separate property of the predeceased spouse, section 229 applies. If it had its source as separate property of the surviving spouse, the section does not apply, but the same purpose is accomplished by distribution of the property upon the death of the surviving spouse to the kin of such spouse under other provisions of the Probate Code. (See Prob. Code, §§ 225-226.) Thus, in *Estate of Harris,* 9 Cal.2d 649, 659, 660-661 [72 P.2d 873], property having its origin in separate property of both spouses was held distributable on the death of the surviving spouse, on the basis of its origin, in part to the family of the surviving spouse and in part to the family of the predeceased spouse, even though during the marriage the property was placed in joint tenancy, then transferred in its entirety to the predeceased spouse and finally retransferred to the surviving spouse. Although the opinion speaks in terms of the law of trusts, this court, looking beyond the character of the property immediately preceding its transfer to the surviving spouse, was concerned with its distribution according to its source. In *Estate of Putnam,* 219 Cal. 608 [28 P.2d 27], and *Estate of Flood,* 55 Cal.App.2d 410 [130 P.2d 811], the property was transferred by the surviving spouse to a third party and later retransferred by the third party to such spouse. The section was held inapplicable on the death intestate of the surviving spouse, without spouse or issue, since the surviving spouse had unconditionally disposed of the property. On its retransfer by the third party donor to the surviving spouse, this spouse and not the predeceased spouse became the source of the property. The "title [of the surviving spouse] . . . was a new title" (*Estate of Putnam, supra,* 219 Cal. 608, 611-612). So in the present case, the decedent himself, and not the predeceased spouse, was the source of the property, for it was acquired through his efforts before it came by gift to the predeceased spouse. The earlier acquisition of the property by the decedent in the present case from an outside source corresponds to the acquisition by the surviving spouse from the third party donors in the Flood and Putnam cases and prevents the application of section 229 for the same reason, namely, the property did not have its origin or source as the separate property of the predeceased spouse within the meaning of the section.

Petitioner's contention that the character of the property at the time of the death of the predeceased spouse is control-

ling would render sections 228 and 229 inconsistent with each other. Section 228 applies when ". . . the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent." (Stats. 1939, p. 2992.) Section 229 likewise applies when ". . . the estate or any portion thereof was separate property of a previously deceased spouse, and . . . became vested in the decedent on the death of such spouse by right of survivorship . . . in a joint tenancy between such spouse and the decedent." The phrase "was community property" in section 228 necessarily refers to the character of the property before it was placed in joint tenancy. Accordingly, it is held that "the Legislature intended to ignore the fact that a vested one-half interest as separate property may be created, and viewed the property in its original form as community property." (*Estate of Taitmeyer, supra*, 60 Cal.App.2d 699, 703, 711, 712; *Estate of Nielsen*, 65 Cal.App. 2d 60, 62 [149 P.2d 737].) Since the two sections must be "read and construed together" (*Estate of Rattray*, 13 Cal.2d 702, 708 [91 P.2d 1042]), consistency requires that the phrase "was separate property" in section 229 also be interpreted as referring to the character of the property before it was placed in joint tenancy. A distribution under section 228 of property that was community property before it was placed in joint tenancy, on the theory that the two spouses are deemed to have contributed equally to its acquisition can find a consistent counterpart in section 229 only if property originally acquired by one of the spouses before it was placed in joint tenancy is distributed in recognition of the fact that this spouse alone contributed to its acquisition.

Petitioner testified that Mrs. Abdale borrowed "twelve or fourteen hundred dollars" by mortgaging real estate that was her separate property, and with this sum paid a special assessment for sewer purposes levied before 1936 against the real estate held in joint tenancy. Contestants contend that this transaction is not material. The transaction is of significance, however, for funds procured by the hypothecation of separate property of a spouse are separate property of that spouse (*Heney* v. *Pesoli*, 109 Cal. 53, 61 [41 P. 819]; *Flournoy* v. *Flournoy*, 86 Cal. 286, 293 [24 P. 1012, 21 Am.St.Rep. 39]; *Carle* v. *Heller*, 18 Cal.App. 577, 582 [123 P. 815]; see 3 Cal.Jur.Supp. 536), and if the payment of the assessment

was by way of gift, Mrs. Abdale was the source of that part of the estate attributable to such payment. (See *Estate of Brady, supra,* 171 Cal. 1, 4.) Accordingly, this part would be distributable to petitioner under section 229. Such part may be segregated from the remainder of the estate by determining what amount of the estate bears the same proportion to the total estate as the amount of the assessment bears to the reasonable market value of the real estate immediately after the assessment was paid.

Petitioner's testimony fails to reveal, however, whether the alleged payment was by way of gift or loan. (See *Tilden* v. *Tilden,* 81 Cal.App. 535, 541 [254 P. 310].) If it was the latter, the payment of the assessment created an indebtedness in William Abdale but did not affect the origin of the real estate. Such indebtedness, if unsatisfied and not otherwise barred, should have been included as an asset in Mrs. Abdale's estate. (See *Estate of Pepper,* 158 Cal. 619, 625 [112 P. 62, 31 L.R.A.N.S. 1092].) It is settled that section 229 does not apply unless property allegedly distributable thereunder is traced and identified as the former separate property of the predeceased spouse (*Estate of Brady, supra,* 171 Cal. 1, 5; *Pickens* v. *Merriam,* 274 Fed. 1, 11), and that the burden is on the party claiming thereunder to so identify the property. (*Estate of Rattray, supra,* 13 Cal.2d 702, 706; *Estate of Harris, supra,* 9 Cal.2d 649, 662; *Estate of Simonton,* 183 Cal. 53, 60 [190 P. 442] ; see 9 Cal.Jur. 416, 563.) It is presumed, moreover, that the payment of debts of the husband with separate property of the wife is a loan, not a gift. (See *McKay* v. *McKay,* 184 Cal. 742, 746 [195 P. 385] ; 3 Cal. Jur.Supp. 565.) It is therefore for petitioner to establish that the alleged tax assessment was paid by way of gift with separate property of Anna Marie Abdale, and to prove the amount of the estate attributable to such payment.

The order is reversed and the cause remanded with directions that the estate be distributed to contestants, except that any part thereof that is attributable to a gift of separate property of Anna Becker Abdale shall be distributed to petitioner.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied Aug. 6, 1946.