96 Cal.App.2d 493 (1950)
Estate of AUGUSTA J. BAXTER, Deceased. SOUREN TOTORIAN, as Executor, etc., et al., Appellants,
v.
ELIZABETH J. HYDE et al., Respondents.
Civ. No. 3785. 
California Court of Appeals. Fourth Dist. 
Mar. 16, 1950.
 Harry Sarkisian for Appellants.
 Wm. M. Miles and L. Nelson Hayhurst for Respondents.
 GRIFFIN, J.
 The executor of the estate petitioned for the probate of the will of Augusta J. Baxter, deceased. By her will she left certain described real property to one beneficiary (a Mrs. Plant) and the balance went to certain specified *494 charities. She did not live for the statutory period after she made the will and for that reason the bequests to charities failed under section 41 of the Probate Code.
 The contest here involved is between the surviving relatives of Mrs. Baxter, namely Elizabeth J. Hyde, Sarah Wilson, et al., respondents, and the surviving relatives of Mr. Baxter, her predeceased husband, namely, Souren Totorian, Margaret Katchadoorian, and Margaret Takness, appellants.
 The Baxters never had any children. The parents of both spouses are dead. The respondent relatives of Mrs. Baxter claim that her entire estate was her separate property at the time of her death and that the remaining undistributed portion thereof should be distributed to them under section 225 of the Probate Code. Appellant relatives of Mr. Baxter claim that the property was community property acquired by the Baxters during their married life; that under section 228 of the Probate Code they are entitled to share in the estate.
 The trial court found that all of Mrs. Baxter's intestate estate was her separate property and should be distributed accordingly. The appeal is from this order. The only question presented is whether the evidence, aided by the presumptions and the question of the burden of proof, is sufficient to support the finding.
 [1a] The Baxters were married in 1908. In 1911, they lived on a small 5-acre farm at Redford, Michigan, which farm was valued at about $2,500. Mr. Baxter was employed. Mrs. Baxter took care of the chickens, cows, garden and the home. What became of the farm or how title thereto was held is not shown. It is likewise not shown whether either party did or did not have separate funds or property prior to their marriage. From 1913 to 1917, they lived in Detroit, Michigan. They bought a flat building for $12,000. Seven thousand dollars cash was paid down and a note and mortgage in the sum of $5,000 were jointly executed by them. Both Baxters were named grantees in the deed. In 1917, they sold that property and came to Fresno County, California, and continued to live there until Mr. Baxter's death in 1942, and her death in 1946. There is evidence in the record that in 1918 the Baxters had approximately $7,000. There is evidence that shortly after their arrival in this state they bought two parcels of farm land and made a profit of $8,100 on the sale of one parcel and $13,000 on the sale of the other. Whether they lost or made money on the farming operations is not shown. However, shortly thereafter, Mr. Baxter, on his own account, went into partnership with his brother and they purchased a *495 $250,000 vineyard. Mr. Baxter paid some money down on it and assigned his interest in a contract of sale of certain properties of the Baxters. It apparently was not a successful operation. Mr. Baxter assigned his interest to his brother and took promissory notes in excess of $8,000, which notes were later reduced to judgment and in 1922 they were listed in the bankruptcy schedule of liabilities of the brother due to the fact that he went through bankruptcy. There is evidence that during the "prosperity period," Mr. Baxter was "buying new automobiles" and "wearing silk shirts." The Baxters' only bank account was closed out in November, 1921, with a balance of $56.19. This would indicate that under Baxter's management their original capital, whatever its source, may have been largely lost.
 There is evidence in the record that in 1922 or 1923, the Baxters bought two parcels of property. One parcel was their home, which property Mrs. Baxter disposed of in her will. The other parcel consisted of three lots, deeded to them as husband and wife, on which they later (in 1926) built a brick building in which was conducted a soda plant. By deed duly recorded in 1925, Mr. Baxter conveyed to his wife as "her sole separate property" both the home and these lots. The consideration was recited as $10 and "less than $100." No revenue stamps were affixed. This property and business was operated by the Baxters until 1938, at which time it was leased and later sold to a Mr. Diel for $18,700, including interest. Seventeen thousand, seven hundred seventy two dollars and eighty cents of this sum was paid over to the executor of Mrs. Baxter's estate. After the sale of this property the Baxters lived in retirement. From what source the Baxters paid their cost of living over these years is not shown. In a deed executed in 1936, to Mr. and Mrs. Baxter, they were named as joint tenants of another parcel of property in Fresno, which property passed under her will to the named beneficiary.
 In reference to the soda plant, the testimony is that in the latter part of 1921, Mr. and Mrs. Baxter started bottling soda on a small scale in their garage back of their home. Both worked hard in an endeavor to build up the business. There is evidence of some success in this respect. They opened another bank account in 1926 with a deposit of $482.06. In 1924, Mrs. Baxter's father died and left her four houses located in Canada, and $7,958.08 in secured mortgages. In 1925, she opened a personal savings account and in 1926 withdrew $1,528.46 therefrom. This exact amount was paid to the title company *496 to release a mortgage on the three lots. In 1926, she obtained a permit to build a building on the three lots at an estimated cost of $6,000. The building was completed in January, 1927. Notice of completion was signed by her reciting that "she caused a building to be erected" thereon, and that "the nature of the title of said owner" is "... she owns it in fee." Between November, 1926, and February, 1927, while the building was being erected, she withdrew from her separate bank account over $7,000. The indication is that this sum was paid for the cost of the building out of her separate account. In January, 1927, the Baxters secured a loan in the sum of $3,500, on the lots and building for the purpose of buying machinery and equipment to be installed in the new bottling plant. A subsequent renewal note was paid in January, 1937. The holder of the renewal note testified that payment thereon was extended to Mrs. Baxter "until she got some money from Canada." Apparently, the bottling business prospered. The record of the bank accounts was received in evidence showing rather substantial deposits and withdrawals. Some were joint accounts. Others were in the name of the partnership organized in 1924 by the Baxters under the name of "Ideal Soda Works." Another was a personal account of Mrs. Baxter in the sum of $3,200, opened in January, 1937.
 As to the Canadian property of Mrs. Baxter, the record shows that the estate was valued at about $31,246.42. Mrs. Baxter received about a one-half interest therein. The "Vesting Order" was dated December, 1928. About that time Mrs. Baxter opened and maintained several bank accounts in Canada. Apparently the real property in Canada was not appraised in Mrs. Baxter's estate. The entire estate of Mrs. Baxter is here appraised at $48,847.96. The value of the property distributed under a partial decree of distribution was fixed at $16,250, leaving a balance in excess of $32,000 for distribution. This balance, according to the record, consists of the following:
 Tabular Material Omitted
 *497
 Appellants concede that the Canadian property is the separate property of Mrs. Baxter and they make no claim thereto, but argue that the only reasonable conclusion that can be drawn from the evidence is that, other than the Canadian property, the whole estate of the deceased, Mrs. Baxter, resulted from the joint efforts of the deceased and her predeceased husband and that the property thus acquired was community property.
 It should be here noted that upon Mr. Baxter's death the attorney for the executor under his will, now attorney for appellants, filed a petition for the probate of his will. It was there claimed that there was no property left by that deceased; that no inventory was therein filed, and that the proceedings were permitted to lapse. It further appears that no claim was there made that there then existed any community property subject to distribution.
 Respondent's argument is that although the money for the sale of the three lots and the building thereon amounted to $17,718.28, its actual cost was only $11,800; that the real property disposed of by the will cost $10,500, but was appraised at $15,500, and that therefore the total appreciation in value approximated nearly $11,000; that all money in the bank accounts, the U.S. Savings bonds and the remaining personal property stood in Mrs. Baxter's name at the time of her death. It is therefore accordingly argued that considering these facts, the amount of Mrs. Baxter's Canadian inheritance and its possible subsequent earnings, which were admittedly her separate property, fully offset or account for the amount of Mrs. Baxter's present estate; and that the court was fully justified in finding that the property now remaining in the hands of the executor was either the separate property of Mrs. Baxter or the fruits and earnings therefrom.
 [2a] Counsel for appellants starts with the premise that by the instruments under which title was conveyed to the Baxters, as husband and wife, the real properties thus acquired, after their marriage, "presumptively" became community property, citing Civ. Code, 162, 164 and 687; Estate of Duncan, 9 Cal.2d 207 [70 P.2d 174]; Maskuns v. Maskuns, 93 Cal.App. 27, 29 [268 P. 1093]; Stafford v. Martinoni, 192 Cal. 724, 738 [221 P. 919]; and Ballinger on Community Property, page 213, stating that the "community generically embraces all property belonging to the spouses, except such as the statute specifically removes from its operation."
 It is respondents' reply, in this respect, that if Mr. Baxter's *498 relatives base their claim on one-half of Mrs. Baxter's remaining estate, they do so under the provisions of section 228 of the Probate Code. That section provides: "If the decedent leaves neither spouse nor issue and the estate or any portion thereof was community property of the decedent and the previously deceased spouse, ... or came to the decedent from said spouse by gift, ... such property goes in equal shares ... to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes ... to the brothers and sisters of said deceased spouse and to their descendants by right of representation."
 It is argued that the burden of proof of appellant heirs' right to inherit is dependent upon their establishing that the property claimed by them had formerly been the community property of the decedent and her predeceased spouse and that since appellants did not meet that burden they are not entitled to distribution of any portion of the property, citing Estate of Rattray, 13 Cal.2d 702 [91 P.2d 1042]; Estate of Simonton, 183 Cal. 53 [190 P. 442]; Estate of Nelson, 104 Cal.App. 613 [286 P. 439]. In the Rattray case there was a finding that the property there involved was community property. The appellants claimed certain money was separate property of the decedent. Proof was offered to the probate court by appellants that at the time of the death of decedent's husband in 1930 decedent had on deposit with the bank in her own name, as shown by her bankbooks, the sum of $16,618.90. A property search report by a title company was also introduced by appellants which tended to show that decedent, during her married life, had held title in her own name to several parcels of real estate. Aside from the fact of title being held by her as her separate property, no evidence was produced to explain the source of the funds by which the property was acquired by her as her separate property. The court there stated the rule to be that if no evidence of probative value was offered by respondents in proof of the fact that the source of the property was the community property of the spouses, respondents would necessarily fail to establish their right to inherit by virtue of their relationship to the predeceased spouse of the decedent; that since their right to inherit depended not merely upon the fact of that relationship, but upon the fact of such relationship plus the fact that the property claimed by them as heirs had formerly been the community property of the decedent and her predeceased spouse, the burden of showing such additional fact rested upon them. *499 In that case, as noted, there was no evidence that the wife had any separate property or that there was any source of separate income making up her estate which she had at the time of her death. In the instant action there is evidence of separate property being acquired by Mrs. Baxter during her married life and that it might be reasonably presumed that she had a source of income therefrom. In the instant proceedings, Mrs. Baxter rented the four houses she received through her father's estate, two of which she kept until her death. Two of them she sold in 1944 for the reputed price of $5,000. The Canadian bank account books, received in evidence, showed a general record of deposits and withdrawals between 1928 and 1943. One showed withdrawals of over $2,800 during that period, and another over $2,400. In August, 1946, one of the Canadian mortgages, in the sum of $1,750, was paid off. Statements in evidence show that the houses in Canada were rented over a period of years. The net proceeds of the rental moneys were either deposited in Mrs. Baxter's bank account in Canada or turned over to her personally. A one-half interest in a small insurance policy, issued on the life of Mrs. Baxter's father, was paid to her.
 [1b] In disposing of the issue here presented, the assets of Mrs. Baxter's estate may be divided into two categories: (1) Assets which have not been traced to community property and which must therefore be distributed as separate property to the relatives of Mrs. Baxter. In this category fall the assets not included in the item of cash received from the sale of the soda plant property. This property all stood in the name of Mrs. Baxter at the time of her death and it is, to say the least, most difficult to determine whether these items of property were her own separate property and the fruits thereof or whether they were a part of the community property and its earnings. Assuming that appellants are entitled to the presumption that all property acquired by the husband and wife during marriage was community property, as contended, yet the record shows that the bulk of it stood in her name prior to Mr. Baxter's death, and all of it was in her name at the time of her death. She did have separate property acquired after her marriage and the court might well conclude that much of it was brought to this state by her in aid of her investment. The trial court, apparently, did not believe that appellants had met the burden resting upon them of establishing to its satisfaction that these amounts were community property. *500 Under the facts related the trial court was justified in making this finding. (Estate of Rattray, supra.)
 Upon an appeal, in such a case, the appellants are confronted with the added task of establishing the fact that there was no real conflict in the evidence and an entire failure of any substantial evidence to support the conclusion of the trial court. The sufficiency of the evidence is primarily for the trial court to determine, and if there is a conflict in the evidence, the finding is not open to review on appeal. (Estate of Duncan, supra.)
 As to the money paid from the sale of the soda works property, a close question is presented. When these three vacant lots were acquired, about 1921 or 1922, it is not shown whether all of the Baxters' money, claimed by appellants to have been community, had been dissipated or not. Mrs. Baxter's father died in 1924, and the "Vesting Order" was made in 1928. Whether or not she received any moneys from Canada between those dates is not shown. It is likewise not shown that she did not have other separate property or income. The record does reflect the fact that $1,100 was paid down on these lots and the balance was paid off in 1923 by the execution of a mortgage by Mr. and Mrs. Baxter for $4,000, which was subsequently paid off in 1929. [2b] The same rule applies here, as above stated, that the burden of proof was upon the appellants to show that the funds used for the purchase of the three lots were in fact from community funds. (Gilmour v. North Pasadena Land etc. Co., 178 Cal. 6 [171 P. 1066].) In Estate of Slack, 13 Cal.2d 721 [91 P.2d 1052], upon which case appellants so strongly rely, it was conceded and found that the money used to purchase the real estate in question was in fact community property.
 It is true that the manner in which Mr. and Mrs. Baxter acquired title to the three lots, i.e., in their names as husband and wife, is presumptive evidence bearing on this question but not conclusive. (Maskuns v. Maskuns, supra; Civ. Code, 164; Shaw v. Bernal, 163 Cal. 262 [124 P. 1012].)
 It should be here noted that two years after the mortgage for $4,000 was executed on the three lots Mr. Baxter executed a grant, bargain and sale deed, and not a gift deed, as was done in the case of Estate of Slack, supra. This grant deed provided that it was subject to said mortgage. The main question here presented, then, is whether appellants have established that such a deed was an inter vivos gift deed, within the meaning of section 228 of the Probate Code, or whether *501 the evidence, aided by the presumptions, supports the court's findings and conclusions that such property was the separate property of Mrs. Baxter.
 [3] The only evidence indicating that this grant might have been a gift appears upon the face of the instrument, that is, that the recited consideration is "less than $100," and that no revenue stamps were affixed. This evidence is not conclusive. Under section 1039 of the Civil Code it is provided that a "[t]ransfer is an act of the parties, or of the law, by which the title to property is conveyed by one living person to another." Section 1040 of the Civil Code states that "A voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity." Section 1053 thereof provides that "A transfer in writing is called a grant, or conveyance; ..." and section 1614 recites that "A written instrument is presumptive evidence of a consideration."
 In Driscoll v. Driscoll, 143 Cal. 528 [77 P. 471], a father deeded real property and his interest in a copartnership to his daughter a long time prior to his death, by grant deed. It was there said, at page 533:
 "Upon the face of the instrument it purported to be a grant to the defendant in praesenti of the property described therein, and as there was no evidence of any matter connected with the transaction which in any respect qualifies or limits its legal effect, the only function of the court was to give effect to its terms, and to declare that the defendant became thereby vested with the entire interest of her father in the property described in the instrument."
 "The finding that the instrument was executed for a good and valuable consideration was also authorized by the evidence. Being in writing, a sufficient consideration was presumed (Civ. Code, sec. 1614); and if the plaintiff would seek to avoid it for want of consideration, the burden of showing such fact was upon her. (Civ. Code, sec. 1615.) If the transaction is to be regarded as a voluntary transfer, no consideration was necessary for its validity (Civ. Code, sec. 1040.) The plaintiff not only failed to show a want of consideration, but she did not even attempt to make such showing, and it affirmatively appears that upon the suggestion of the notary the defendant gave to her father a dollar as a consideration for the deed. In the absence of any imputation of fraud the amount of the consideration for a deed is immaterial."
 It would appear, therefore, that the trial court could rely *502 upon the presumption in holding that there was a consideration for the deed and that the grant was not a gift inter vivos. It was shown that shortly after this transfer Mrs. Baxter drew funds from her personal savings account and the mortgage was released. She obtained a permit to build the building and represented herself as owner of the fee. Over $7,000 was withdrawn from her separate account to finance the building project. In 1927 a new loan of $3,500 was secured on the lots and building for the purpose of buying the machinery. There is evidence that this renewal note was paid and that she then represented that the money for such payment was coming from Canada. It therefore fairly appears that the original investment could have been paid from Mrs. Baxter's separate estate and from the fruits and earnings thereof, and that the profits, being the difference between the cost and selling price of the property, remained her separate property. (Civ. Code, 162; Shaw v. Bernal, supra; Dyment v. Nelson, 166 Cal. 38 [134 P. 988]; Huber v. Huber, 27 Cal.2d 784 [167 P.2d 708].) Insofar as the lots, building and machinery are concerned, there is sufficient evidence, aided by the presumptions, to support the finding of the court in respect to this property.
 The agreement for the sale of that property to Mr. Diel, for the price stated, also included the business and good will. It is not shown what portion of the price, if any, represented the value of the business or good will. Appellants having failed to show that any portion of the business was community property, this court would be helpless in endeavoring to determine that the parties fixed any additional price upon the business and good will separate from the price of the lots, buildings and machinery. The cost of living may have absorbed any community funds that were earned. It is the presumption that the expenses of the family are paid from community earnings. (Huber v. Huber, supra.)
 While the evidence might have supported a contrary conclusion than that reached by the trial court, it cannot be said that its findings are not supported.
 Order affirmed.
 Barnard, P. J., and Mussell, J., concurred.