[Civ. No. 17547.   First Dist., Div. One.   Mar. 7, 1958.]

KATHERINE L. SELLAR, Respondent, v. GEORGE
SELLAR, Appellant.

Ernest O. Meyer and James A. Himmel for Appellant.

Gladstein, Andersen, Leonard & Sibbett and Ewing Sibbett for Respondent.

WOOD (Fred B.), J.—Defendant George Sellar moved to modify a final decree of divorce by setting aside a property settlement agreement which was attached to and incorporated in the interlocutory and approved by the interlocutory and the final decrees.

He sought to delete from the decree and the agreement "all alimony, support payments, devises and bequests and interests of every kind . . . for the benefit of plaintiff [Katherine Sellar] . . . and that the property of defendant be released from any and all liens by reason thereof."

He sought this deletion on the alleged ground of intrinsic fraud* in the negotiation and execution of the agreement and in the conduct of the divorce proceedings. The public policy that underlies the principle of res judicata "must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case . . . [Equitable] relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully

---

*He did not invoke the power of the court to modify under authority of section 139 of the Civil Code.

presenting his case. [Citations.]" (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18-19 [193 P.2d 728].) Some but not necessarily all of the defendant's allegations bring his motion within the purview of this policy. Since the trial court found against him upon every point and the evidence supports the findings, it is unnecessary to consider which points might have entitled him to relief if the court had found in his favor.

■ (1) *The evidence supports the finding that defendant was physically and mentally capable of understanding and executing the property settlement agreement and appearing as a witness on behalf of himself at the hearing of the divorce action.*

Although there was evidence that defendant had been a heavy drinker of alcoholic beverages and that he was under the influence of alcohol a great deal of the time, there was also evidence that he was a periodic drinker and between ''binges'' would abstain from drinking for several weeks. Mr. K. R. McDougall, defendant's attorney at the time of the negotiation of the agreement, testified that he was in frequent consultation with defendant during these negotiations, that everything was explained to him, and that defendant did not appear to be under the influence of liquor during these consultations. The final form of the agreement was explained to him clause by clause, and he took it home with him for further study. At the time he did not appear to be under the influence of liquor. The defendant was actually present at the hearing of the interlocutory decree and sober. The final decree was obtained at defendant's own instigation. Defendant himself testified that he was familiar with the most important features of the agreement and had complied with them since the time the agreement was executed.

During the period of the negotiation of this agreement, defendant executed a partnership agreement with his business partner. The latter testified that upon that occasion defendant knew what he was doing, knew what was in the partnership agreement.

■ (2) *The evidence supports the finding that the agreement was not tainted with compulsion and overreaching on the part of the plaintiff.*

Defendant seems to predicate his claim of compulsion and overreaching upon the fact that the parties married in March, 1951, separated in August, 1952, and executed the agreement in January, 1953, plus the asserted lack of any community

property and the fact that by the terms of the agreement defendant was very generous toward the plaintiff.

Those facts of themselves do not spell "compulsion and overreaching" on the part of the plaintiff, especially in view of the further facts that the parties were first married in 1921, divorced in 1936, and had a dependent epileptic son for whose welfare both parties wished to provide and did provide.

Moreover, defendant has not brought to our attention any evidence that the provisions of the agreement, however generous toward the plaintiff, did impose an undue burden upon defendant. For aught that appears, the amounts which defendant agreed to pay for plaintiff's support and the support of their son may have been well within the scope of his ability to pay at the time of the execution of the agreement, which significantly provided that these commitments upon his part "shall be subject to downward revision by a proper Court" except that the amount of support for plaintiff could not be reduced below an amount equal to 35 per cent of his net income for any particular month.* There has been no showing and no attempt to show any change in his financial circumstances.

■ (3) *There was no lack of consideration for the property settlement agreement.*

Lack of consideration, standing alone, would hardly furnish a basis for relitigating the validity of the agreement. However, the very fact that it was in writing furnished "presumptive evidence of a consideration" (Civ. Code, § 1614) and cast upon defendant, "the party seeking to invalidate or avoid it," the "burden of showing a want of consideration" (Civ. Code, § 1615). (See *Estate of Brimhall,* 62 Cal.App. 2d 30, 34 [143 P.2d 981]; *Estate of Baxter,* 96 Cal.App.2d 493, 501 [215 P.2d 805].) Each party reciprocally released the other party "from any and all [past and future] liabilities, debts, and obligations of every kind and character" except as in the agreement otherwise provided. This, of course, was a significant element of consideration. (*Remondino* v. *Remondino,* 41 Cal.App.2d 208, 213-214 [106 P.2d 437].)

Furthermore, the agreement expressly declared the cancellation of a trust which the parties created in 1947 for the

---

*We, of course, are not deciding whether the parties, when they consent to judicial modification of their agreement, may place limitations upon the extent of the modifications a court of competent jurisdiction may make.

benefit of their son and of a will which in 1947 the parties agreed defendant would execute, also the cancellation of any other agreement between the parties for the benefit of plaintiff or of the son; subject to the condition that if it be held by final judgment of a proper court that the cancellation of the trust or of any such agreement be ineffective without the consent of a guardian for the son and court approval thereof, and such consent and approval be not given within 10 days after such final judgment, "all provisions of this property settlement agreement shall become null and void and of no effect, at the option of Husband or his personal representative, if he be dead."

These cancellations, if effective, would operate to lessen defendant's obligations and thus would be a "benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled." That would be good consideration for a promise. (Civ. Code, § 1605.)

There well may have been additional elements of consideration. Those here mentioned are sufficient.

■ (4) *Was the judge who presided at the divorce trial fully advised as to the terms of the agreement?*

The answer is "Yes," as found by the trial judge herein. That would seem to end our inquiry, for he presided upon both occasions. Moreover, the record shows that at the original hearing the judge had the agreement before him, could have learned from its perusal all that defendant now claims he should have known, was orally apprised of the monthly payments agreed to be made to plaintiff, asked plaintiff and was assured by her of the authenticity of the signatures and that the terms were satisfactory to her, whereupon the judge asked defendant's counsel and was assured by him that the agreement was agreeable to the defendant also.

Clearly, the finding on this subject is sufficiently supported. Even if it were not, that would not necessarily furnish an adequate basis for reversal.

The order is affirmed.

Peters, P. J., and Bray, J., concurred.