**RANGE ROAD MUSIC, INC., Jerry Leiber d/b/a Jerry Leiber Music, and Mike Stoller d/b/a Mike Stoller Music, Plaintiffs,**

v.

**MUSIC SALES CORPORATION, Josephine Van Heusen individually and as Co–Trustee under the James Van Heusen Inter Vivos Revocable Trust Declaration of 1990, and Marshall Gelfand, Co–Trustee under the James Van Heusen Inter Vivos Revocable Trust Declaration of 1990, Defendants.**

No. 97 Civ. 3098(JES).

United States District Court, S.D. New York.

Nov. 23, 1999.

**376**

Abelman, Frayne & Schwab, New York, Robert C. Osterberg, of counsel, for Range Road Music, Inc.

Silverman & Shulman, P.C., New York City, Alan L. Shulman, of counsel, for Jerry Leiber, Mike Stoller.

Harvey Stuart, New York City, for Music Sales Corporation.

Edward M. Cramer, New York City, for Music Sales Corporation.

Yudin & Yudin, New York City, Stephen G. Yudin, of counsel, for Josephine Van Heusen.

Lewis, D'Amato, Brisbois & Bisgaard, LLP, Los Angeles, CA, for Josephine Van Heusen.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Range Road Music, Inc. ("Range Road"), Jerry Leiber ("Leiber") and Mike Stoller ("Stoller") bring this action against Music Sales Corporation ("MSC") asserting claims for copyright infringement, and against Josephine Van Heusen ("Josephine") and Marshall Gelfand ("Gelfand") for authorization of copyright infringement and for breach of contract. MSC moves for summary judgment solely on the ground that plaintiffs cannot establish ownership of the copyrights at issue. Plaintiffs cross-move for summary judgment *sua sponte* based upon the alleged ownership of the copyright extended renewal terms for two songs composed by Josephine Van Heusen's late husband. For the reasons set forth below, MSC's

motion for summary judgment is denied and plaintiffs' cross-motion is denied.

## STATUTORY BACKGROUND

After much debate and discussion, Congress enacted the Copyright Act of 1976 (the "1976 Act" or "the Act") in an effort to increase the protection of authors of copyrightable works. Prior to the 1976 Act, the law provided for two copyright terms of 28 years each, an original and a renewal term, for a total of 56 years. *See Bourne Co. v. MPL Communications, Inc.*, 675 F.Supp. 859, 860 (S.D.N.Y.1987) (*"Bourne"*). The 1976 Act created a third period of protection of 19 years, an extended renewal term, for a total of 75 years.[1] *See* 17 U.S.C. § 304(a)(2)(A). An aim of the 1976 Act was to "correct the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited," by permitting authors to terminate unprofitable transfers and renegotiate new grants for the extended renewal term with interested publishers. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 124, reprinted in 1976 U.S.Code Cong. & Admin. News 5659, 5740. Accordingly, the Act allows authors or certain successors provided for in the statute to terminate a pre-existing grant after its 56th year, and in effect "reclaim" the copyright for exploitation during the extended renewal term. *See Bourne*, 675 F.Supp. at 859.

Section 304 of the 1976 Act governs the termination of copyright transfers executed prior to January 1, 1978. Under the applicable provision, an author must serve written notice on the grantee of his intent to reclaim the extended renewal term not less than two nor more than ten years before the specified effective date of termination.[2] *See* 17 U.S.C. § 304(c)(1) & (4). If the author is deceased, his termination interest can only be exercised by certain statutory successors provided for in the Act subject to the same basic requirements regarding notice of termination that are imposed upon the author. *See id.* at § 304(c)(2) & (4).

Thereafter, upon the effective date of termination, the terminated copyright reverts back to the party that served the notice of termination. *See id.* at § 304(c)(6). The reversionary interest created by the service of the notice of termination vests at the time the notice of termination has been served on the grantee. *See id.* at § 304(c)(6)(B). Furthermore, the reversionary interest heretofore discussed is subject to several limitations, only one of which has particular relevance here. The Act provides that a "further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if it is made after the effective date of termination." *Id.* at § 304(c)(6)(D). Thus, an author may not ordinarily assign or grant the extended renewal term until after the effective date of termination, i.e. after the 56th year. An exception to this provision permits the author or his statutory successor to make a grant prior to the effective date of termination and after the notice of termination has been served, provided that the grant of the extended renewal term is made to the original grantee whose interest has been terminated. *See Bourne*, 675 F.Supp. at 861.

## FACTS

Composer Jimmy Van Heusen ("Jimmy") copyrighted the two songs at issue in this case, "I Thought About You," and "Darn That Dream," in 1939. *See* MSC's Rule 56.1 Statement, dated September 10, 1997 ("MSC's 56.1 Stmt.") ¶ 1. During the years 1966–67, Jimmy assigned his rights in the copyright renewal terms of these songs to his own publishing company, Van

---

1. The Sonny Bono Copyright Term Extension Act of 1998 ("1998 Copyright Act") extends the total renewal period from 75 to 95 years. *See* 17 U.S.C. § 304(b).

2. The 1998 Copyright Act modified the time in which to effect termination of copyrights where the termination right had previously expired. *See* 17 U.S.C. § 304(d)(2).

Heusen Music Publishing Corporation. *See* MSC's 56.1 Stmt. ¶ 2; Plaintiffs' Response to MSC's 56.1 Statement, dated December 5, 1997 ("Pls.' 56.1 Response") ¶ 2. Two years later, in 1969, which was also two years into the second 28 year renewal term of the copyrights, Van Heusen Music Publishing assigned the rights to the copyright renewal terms to Lewis Publishing ("Lewis") in a document entitled the "Uniform Popular Songwriters Renewal Contract." *See* MSC's 56.1 Stmt. ¶ 3; Declaration of Freddy Bienstock ("Bienstock Decl."), Ex. 7.

In October and November of 1985, Jimmy sent notices of termination to Lewis, reciting the effective dates of termination of the second 28 year copyright renewal terms as October 13, 1995, for "I Thought About You," and November 24, 1995, for "Darn That Dream." *See* MSC's 56.1 Stmt. ¶ 3. These notices comply with the termination provisions of § 304(c)(4) of the Act.

On August 1, 1986, less than one year after Jimmy effected notice of termination upon Lewis, Jimmy and his wife, Josephine, attempted to assign their rights in both songs to Bienstock Publishing ("Bienstock") by executing a document with the terms of the assignment and an additional assignment on August 6, 1986 (collectively referred to hereinafter as the "Bienstock Agreement"). *See* MSC's 56.1 Stmt. ¶ 4; MSC's Notice of Motion, Ex. E & F; Pls.'s 56.1 Response ¶ 4. Two months later, on October 2, 1986, Bienstock assigned its rights in the two songs to the plaintiffs. *See* MSC's 56.1 Stmt. ¶ 5; Pls.'s 56.1 Response ¶ 5.

On August 10, 1989, Josephine was declared Jimmy's court-appointed conservator due to Jimmy's incompetency. *See*

Statement of Robert Allen Rose, Esq., ("Rose Decl.") dated August 20, 1998 at ¶ 1. On February 8, 1990, Josephine, in her capacity as conservator, executed "the James Van Heusen Inter Vivos Revocable Trust" (hereinafter, the "Trust"), naming her, and Jimmy's accountant, co-defendant Gelfand, as its Trustees. *See* Josephine Van Heusen's Notice of Motion to Dismiss, dated September 9, 1997 ("Josephine's Motion to Dismiss"), Ex. A at 1. Under the terms of the Trust, its corpus included all issued shares of Van Heusen Music Publishing, but made no mention of the copyright renewal terms to the songs at issue in the case at bar.[3] *See id.* at 27. In 1991, some four years before the effective date of termination, Jimmy died. *See* Rose Decl. at ¶ 2. Jimmy's will, which was executed in 1983, but not offered for probate, *see id.*, established a trust wherein Jimmy granted Josephine a life interest in the residue of his estate, with the remainder to his nephew, Donald Babcock. *See* Will of James Van Heusen a/k/a Edward Chester Babcock dated May 27, 1983 (the "Will") at 1. The Will also bestowed upon Josephine a "one-half interest in our community property and/or quasi-community property." *Id.*

The extended renewal periods began on October 13, 1995 for "I Thought About You," and November 24, 1995 for "Darn That Dream," and will continue into the year 2034. On December 29, 1995, Bienstock induced Josephine to execute a confirmation of the Bienstock Agreement ("1995 Confirmation"), in which Josephine affirmed all grants made in the Bienstock agreement "as if they were made on the date hereof." In the 1995 Confirmation, Josephine also voluntarily waived any claim that she may have possessed that

---

**3.** Although not necessary for the disposition of the instant motions, the Court notes that it is unlikely that Josephine could have granted the extended renewal terms to anyone pursuant to the 1990 Trust because Jimmy's interests in the copyrights, as discussed *infra* at 8–11, could not have been transferred until after the effective dates of termination to anyone but the original grantee. Since there is nothing in the record to indicate that Jimmy executed an assignment of his interests to Van Heusen Publishing, the original grantee, after he served the notices of termination upon Lewis, his interests would have passed to his estate upon his death.

the Bienstock Agreement was invalid. *See* MSC's 56.1 Stmt. ¶ 6; MSC's Notice of Motion Ex. I; Pls.'s 56.1 Response ¶ 6. Subsequently, in July 1996, MSC, the successor-in-interest of Lewis Publishing, entered into an agreement with Josephine and Gelfand, as co-trustees of the Trust, for the assignment of the 19 year copyright extended renewal term of the two songs. *See* MSC's Answer at ¶ 4.

Plaintiffs claim that MSC infringed on the copyright that plaintiffs took pursuant to the Bienstock Agreement executed August 1, 1986, and the subsequent assignment by Bienstock to plaintiffs of all rights that Bienstock acquired from that agreement. *See* Plaintiffs' Complaint, dated April 23, 1997 ("Compl.") ¶¶ 12–16, 24, 26–28. In the alternative, plaintiffs argue that because all rights vested in Josephine after Jimmy's death, plaintiffs can support their claimed based on the 1995 Confirmation executed by Josephine. *See id.* ¶¶ 32, 42. MSC counters that since the Bienstock Agreement was invalid on its face, Josephine's purported confirmation was ineffective to transfer any copyright interests to plaintiffs.

### DISCUSSION

It is well established that summary judgment is appropriate where there is no genuine issue as to any material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Where both parties seek summary judgment, the Court must "evaluate each party's motion on its merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Abrams v. United States*, 797 F.2d 100, 103 (2d Cir.1986). In the instant case, plaintiffs have never filed a formal notice to move for summary judgment, but request that the Court grant summary judgment in their favor *sua sponte*.

■ A court may grant summary judgment sua sponte to a non-moving party without providing 10 days notice where another party has moved for summary judgment so long as the moving party has had an adequate opportunity to present evidence on the issue on which summary judgment is granted. *See Orix Credit Alliance, Inc. v. Horten,* 965 F.Supp. 481, 484 (S.D.N.Y.1997) (holding that a court could grant summary judgment without giving prior notice because the moving party had an adequate opportunity to brief and argue its summary judgment motion); *see also* Moore's Fed. Prac.3d ed. § 10(b)(2).

In light of the fact that MSC and plaintiffs have filed and served original and renewed motions for summary judgment, and argued those motions before the Court, the Court finds that defendant MSC has had ample notice of plaintiffs' motion, and has had an adequate opportunity to present evidence regarding the claim of copyright infringement. Accordingly, the Court will consider plaintiffs' motion for summary judgment even though it was not filed in a formal manner.

*Copyright Infringement*

■ To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.1997). Since there is no dispute regarding the issue of copying, the Court need only consider plaintiffs' ownership of the extended renewal terms for "I Thought About You" and "Darn That Dream." If plaintiffs are unable to prove ownership of the copyrights, defendants cannot be liable for infringement to the plaintiffs.

Plaintiffs argue that the termination rules applicable to the extended renewal period in the 1976 Act are inapplicable here because Jimmy's original grant to the renewal term publisher, Van Heusen Publishing, did not include the extended re-

newal term. It follows, plaintiffs contend, that Jimmy owned the rights to the extended renewal term in 1986 outright when he entered into the Bienstock agreement without need to comply with the Act's termination provisions. Plaintiffs base their argument upon a subsection of the transfer from Jimmy to Van Heusen Publishing that states that the transfer is "for and during the second or renewal period of the United States copyright or for the period of twenty-eight years from the date of expiration of the first original term of the United States copyright, whichever may be shorter, and *subject to the terms of this contract.*" *See* Bienstock Decl., Ex. 7 at ¶ 1 (emphasis added). Plaintiffs' position is without merit because it is clear that the language relied upon by Range Road is qualified and made "subject to" the rest of the terms of the contract. As discussed below, the language in the contract regarding the duration of the transfer indicates that Jimmy intended a broad transfer of his rights, not limited to the 28 year renewal term.

The Act provides that "unless and until termination is effected under this subsection, the grant, if it does not provide otherwise, continues in effect for the remainder of the extended renewal term." 17 U.S.C. § 304(c)(6)(F). Contrary to plaintiffs' interpretation, the grant from Jimmy to Lewis did not limit Lewis to the 28 year renewal term because the relevant section pertaining to the length of the grant, entitled "Term of Contract," wherein it states that "the rights ... shall revert to the Writer upon expiration of the renewal term," is crossed-out and initialed by Jimmy. *See* Bienstock Decl., Ex 7 at ¶ 8. Jimmy's affirmative act of striking this language indicates that he contemplated a broad grant to Van Heusen Publishing, not limited to the 28 year renewal period. Moreover, Jimmy's subsequent conduct reinforces this conclusion. First, in a contract of assignment between Van Heusen Music Publishing and Lewis in September, 1969, Jimmy agreed to assign *"all"* of Van Heusen Music Publishing's rights in the

*"renewal copyrights"* for the "United States of America renewal periods" of the songs. *See* MSC's Notice of Motion, Ex. C (emphasis added). Second, the Bienstock agreement itself, negotiated by Jimmy and Freddy Bienstock, the President and Treasurer of plaintiff Range Road, specifically refers to the termination rules governing the extended renewal terms contained in the 1976 Act. *See id.* at Ex. E. at 2. The agreement required Jimmy to warrant the notice of termination that he served upon Lewis. From this and other language in the agreement, it is clear that the parties to the Bienstock agreement understood that Jimmy had to effect termination of the copyrights before he could transfer them.

Plaintiffs' argument that the reference to the termination rules in the Bienstock agreement is mere surplusage because of a misunderstanding of Jimmy's agent, Miriam Stern, is bereft of any competent factual support. Instead, the only evidence relevant to plaintiffs' position is the declaration of Freddy Bienstock who purports to divine the intent of both Stern (who prepared the Bienstock agreement) and Jimmy (who signed it) for including the termination language in the Bienstock agreement in the first place. *See* Bienstock Decl. at ¶ 6. Bienstock's declaration, however, merely recites his counsel's argument that the assignment from Jimmy to Van Heusen Publishing was limited to the renewal term. In the absence of any competent factual support regarding Jimmy's supposed intent, the Court must conclude that the plain language of the Bienstock agreement bolsters the conclusion that the termination provisions of the 1976 Act apply to the case at bar.

■ In the alternative, plaintiffs argue that they own the extended renewal terms pursuant to the broad language of the Bienstock agreement entered into by Jimmy Van Heusen on August 6, 1986, after Jimmy had effected notice but *before* the effective dates of termination. However,

this argument must be rejected because the Act prohibits an author from making a grant or transfer of his interest in the extended renewal terms until after the effective date of termination. The Act provides that "[a] further grant, or agreement to make a further grant, of any right covered by a terminated grant *is valid only if made after the effective date of termination.*" *Id.* at § 304(c)(6)(D) (emphasis added). Thus, pursuant to the statute, the Bienstock Agreement was invalid on its face and Bienstock conveyed nothing to the plaintiffs in October 1986. Moreover, since plaintiffs are neither the original grantee nor the grantee's successor in title they cannot take advantage of the statutory exception to the general prohibition against transfers prior to the effective date of termination. *See id.* Therefore, pursuant to the plain language of the statute, the Bienstock Agreement was invalid on its face and Bienstock conveyed nothing to plaintiffs.

▮ Plaintiffs counter that even if the 1986 Bienstock agreement was a nullity because it ran afoul of the Act's termination provisions, plaintiff can still prevail because Josephine confirmed the 1986 grant in her 1995 Confirmation to plaintiffs. In response, MSC argues that because the 1986 Bienstock Agreement was invalid on its face, the confirmation in December 1995 did nothing more than confirm a nullity. The Court agrees with MSC that a mere confirmation of the 1986 agreement, which had no legal effect because it violated the plain language of the statute, cannot cure the defective transfer. However, the language of the 1995 Confirmation, dated and signed by Josephine on December 29, 1995, was more than a mere confirmation of the 1986 agreement. It provides in relevant part:

James Van Heusen and Josephine Van Heusen have heretofore entered into an agreement with Bienstock Publishing Company, dated August 6, 1986, relating to the musical compositions "I Thought About You" and "Darn That Dream."

Josephine Van Heusen, does hereby confirm the said grant in all particulars as if this grant were made on the date hereof. Any payments heretofore made by the publisher to the undersigned are acknowledged by the undersigned as if made hereunder.

MSC's Notice of Motion, Ex. I. In view of both the date of execution and the language of the 1995 Confirmation, particularly the section that reads "as if this *grant* were made *on the date hereof,*" the Court concludes that it was a fresh grant. *See Radio Television Espanola S.A. v. New World Entertainment, Ltd.,* 183 F.3d 922, 927 (9th Cir.1999) (holding that "no magic words must be included in a [transfer] document to satisfy [the Copyright Act]. Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright"). The fact that the 1995 Confirmation is a fresh grant, and complies with the Act's prohibition against transfers prior to the effective date of termination, would resolve the question of ownership in plaintiffs' favor, if Josephine had the right to transfer the extended renewal terms in 1995 in the first place.

Under 17 U.S.C. § 304(c)(6)(B), "[t]he future rights that will revert upon termination of the grant become vested on the date the notice of termination has been served as provided by clause (4) of this subsection." Therefore, the future rights that would have reverted to Jimmy Van Heusen in 1995, upon the expiration of the second 28 year copyright renewal terms of the songs, actually vested in Jimmy when he sent the notices of termination to Lewis in October and November of 1985. Accordingly, the extended renewal terms passed to Jimmy's estate upon his death. *See Bourne,* 675 F.Supp. at 862 (holding that where an author dies before the effective date of termination, interest passes to author's estate); 3 M. Nimmer, Nimmer on Copyright, § 11.03(A), at 11–27 to 11–28 (1997) ("If an author serves a notice of termination of a grant he or she has made, but dies prior to the date of termination

specified in the notice, the terminated rights pass to the author's estate"). Plaintiffs agree that the extended renewal terms passed to Jimmy's estate upon the effective date of termination in 1995. As a result, they argue that since Jimmy died intestate and childless, his wife Josephine, under California community property law, is his sole legal heir. This being so, plaintiffs contend that Jimmy's vested interests in the extended copyright terms passed in their entirety to Josephine upon his death in 1991. Plaintiffs conclude, therefore, that Josephine's 1995 confirmation of the Bienstock agreement, made after the effective date of termination, was a valid transfer of her rights in the extended renewal terms to the plaintiffs.

The Court does not find this argument persuasive. Although it is true that under California law a spouse of a childless individual that dies without a will is entitled to share in the decedent's estate (although not necessarily the entire estate), see CAL. PROB. CODE § 6101 (West 1991); 1 M. Nimmer, Nimmer on Copyright, § 6A.02[C], at 6A–11 to 6A–12 (1997) ("Upon the death of either husband or the wife, *one-half* of the community property belongs to the surviving spouse, and the other half is subject to testamentary disposition by the decedent") (emphasis added), Jimmy did not die intestate. Indeed, the parties concede that Jimmy Van Heusen had a will. *See* Plaintiffs' Supplemental Submission in Support of Pending Request for Summary Judgment dated July 21, 1999 at 1; Defendant Music Sales Corporation's Supplemental Memorandum of Law in Support of its Renewed Motion for Summary Judgment dated July 22, 1999 at 1. Under the law of California, the state in which Jimmy resided upon his death, a decedent's property only passes under the intestacy statute to his heirs if the decedent failed to dispose of his property by will. *See* CAL. PROB. CODE § 6400 (West 1991); *In re Taitmeyer's Estate,* 60 Cal.App.2d 699, 708, 141 P.2d 504 (1943) (holding that *"in the absence of a will,* the right of inheritance is dependent upon operation of law") (empha-

sis added). Moreover, contrary to plaintiffs' argument, the fact that Jimmy's Will has not yet been offered for probate does not render it ineffective, since it may be offered for probate without being barred by any statute of limitations. *See Parker v. Walker,* 5 Cal.App.4th 1173, 1186, 6 Cal.Rptr.2d 908 (Cal.Ct.App.1992) (noting that "the statute of limitations cannot be asserted in proceedings for the probate or contest of a will") (citing *Estate of Hume,* 179 Cal. 338, 340–46, 176 P. 681 (1918)).

■ Under the terms of the Will, Josephine was entitled to an outright distribution of a "one-half interest in our community property and quasi-community property." *See* Will at p. 1. Furthermore, under the Will's residuary clause (through which the copyrights would presumably pass as they are not specifically referred to in the Will), Josephine also received a life interest in the in the residue of Jimmy's estate, with the remainder to Jimmy's nephew, Donald Babcock. *See* Will at 4–5. Based on the preceding provisions of the Will, numerous factual issues arise that precludes the Court from granting summary judgment to either the plaintiffs or to MSC. First, the Court is unable to determine whether the copyrights, issued in 1939, are community or separate property under California law since there is nothing in the record to indicate when Jimmy and Josephine were married. If they were married after Jimmy obtained the copyrights, then they may be considered separate property not subject to the provision of the Will regarding the outright distribution of the couple's community property. On the other hand, if they were married before the issuance of the copyrights, then the copyrights may be community property subject to a one-half distribution pursuant to paragraph 3 of the Will. Second, issues of fact exist as to Josephine's failure to probate Jimmy's Will, her possible consumption of Jimmy's other assets to the extent they exceed her entitlement under the Will, and Donald Babcock's (the residuary legatee) interest

in Jimmy's estate (and in this litigation). Finally, substantial and complicated questions of California probate law, which the parties have declined to brief (even after the Court's twice offered invitation), and which this Court is ill-equipped to resolve, remain unanswered.

■ Since plaintiffs have failed to conclusively establish that Josephine owned anything in 1995, the Court cannot grant their cross-motion for summary judgment for copyright infringement. Likewise, the Court denies MSC's motion for summary judgment since Josephine (at the very least) may have had a one-half interest in the copyrights at issue if she married Jimmy prior to the issuance of the copyrights making them subject to the Will's provisions regarding the couple's community property. For all of the aforementioned reasons, the Court directs the Clerk of Court to place the instant action on the Court's Suspense Calender pending a decision either in probate or in a suit for declaratory relief from a California court regarding the ownership of the copyrights in dispute.

## CONCLUSION

For the reasons set forth above, defendant MSC's motion for summary judgment is denied and plaintiffs' cross-motion for summary judgment is denied. The instant action shall be placed on the Court's Suspense Calender until January 1, 2001. The parties are directed to appear before the Court for a Pre–Trial Conference on January 5, 2001, at 12:00 p.m. in Courtroom 705, 40 Centre Street.

It is **SO ORDERED.**